**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

GINKO, LLC,

Plaintiff,

v.

APPLE, INC.,

Defendant.

Civil No. 1-24-cv-01279

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Ginko LLC ("Ginko"), by and through its attorneys, for its First Amended Complaint against Defendant Apple, Inc. ("Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., of Ginko's United States Patent No. 11,025,573 (the "'573 Patent") based on Defendant's manufacture, use, importation, offer for sale, and sale of devices in the United States that infringe the '573 Patent, including the Apple iPhone 16 Pro, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 14 Pro, iPhone 14 Plus, iPhone 14, iPhone SE (2nd & 3rd Generation), iPhone 13 Pro Max, iPhone 13 Pro, iPhone 13 Mini, iPhone 13, iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12 Mini, iPhone 12, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR (collectively, the "Infringing iPhones"), and Apple Watch Series 7, Apple Watch Series 8, Apple Series 9, Apple Watch Series 10, Apple Watch SE (2nd Generation), Apple Watch Ultra, and Apple Watch Ultra 2 (collectively, the "Infringing Watches"). Together, the Infringing iPhones and the Infringing Watches are known as the "Infringing Devices."

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has specific and general personal jurisdiction over Defendant in this district because of Defendant's presence in this judicial district. Defendant has availed itself of the laws of Texas. Defendant has derived substantial revenue from sales of the Infringing Devices in the State of Texas, and it has systematic and continuous business contacts with the State of Texas. Ginko's claims arise out of and relate to, in part, Defendant's contacts with the State of Texas. Defendant conducts business within the State of Texas and has a registered agent in Texas.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has committed acts of infringement in this district and has regular and established places of business in this district.

5. Defendant's regular and established places of business in the Western District of Texas include a 3-million square-foot campus on one hundred and thirty-three acres in Austin, which is in the process of being built.[1] The campus will employ at least 5,000 employees with job functions ranging from engineering, R&D, operations, finance, sales, and customer support.[2]

---

[1] *Apple expands in Austin* (Nov. 20, 2019), https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/

[2] *Apple to build new campus in Austin and add jobs across the US* (Dec. 13, 2018), https://www.apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/ ; *See also Careers at Apple*, https://www.apple.com/careers/us/work-at-apple/austin.html (last visited on Jul. 17, 2024).

6. The new 1 billion-dollar Apple campus is less than a mile from existing facilities, including another campus that includes Apple's Americas Operation Center.[3]

7. Defendant has retail stores in the Western District of Texas in Austin, El Paso, and San Antonio.[4]

## PARTIES

8. Ginko is a Michigan corporation with its principal place of business at 3523 Oak Knoll Drive, Brighton, MI.

9. Defendant is incorporated in California and has regular and established places of business in this judicial district.

## FACTS

### A. The '573 Patent

10. United States Patent 11,025,573 (the "'573 Patent"), entitled "Method and Apparatus for Data Sharing," was duly and legally issued on June 1, 2021, and named Ronald Czajka and Sam Attisha as the inventors (the "Inventors"). Attached as Exhibit 1 is a true and accurate copy of the '573 Patent.

11. Ginko is the assignee of the entire right, title, and interest in the '573 patent.

12. The '573 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. Defendant had knowledge of the '573 Patent at least as of the date of the initial Complaint in this lawsuit—October 24, 2024.

---

[3] Aquila, *Apple's Austin Offices & Headquarters: History, Details & Predications* (Feb. 26, 2019), https://aquilacommercial.com/learning-center/apple-austin-offices-headquarters-history-details-predictions/

[4] *Apple Retail Stores, United States*, https://www.apple.com/retail/storelist/ (last visited on Jul. 17, 2024).

13. Upon information and belief, Apple tracks developments in relevant technology areas through industry conferences, internal IP reviews, and patent database searches. Apple has engaged in extensive patent litigation and licensing in wireless communication. Given its history of patent disputes and active participation in patent-related activities, it is reasonable to infer that Apple may have become aware of the ‘573 Patent during the period in which NameDrop® was developed and released. The extent of Apple’s internal patent review processes is unknown without discovery.

14. Furthermore, as a major technology company with a substantial patent portfolio in wireless communication, Apple routinely performs patent clearance searches before introducing new features in competitive markets. Apple has previously pursued patent enforcement actions against other technology companies, demonstrating its recognition of the importance of patent rights in its field. Given its established due diligence practices, Apple likely conducted a pre-launch patent search before introducing NameDrop®. Had Apple followed standard industry procedures and reviewed patents in relevant classifications, it would have been expected to identify the ‘573 Patent prior to this lawsuit being filed.

15. Apple’s failure to acknowledge the ‘573 Patent—despite its well-documented patent monitoring and enforcement practices—raises a strong inference of willful blindness. Courts have recognized that willful blindness can be established when a company deliberately avoids confirming the existence of a patent while continuing to develop and commercialize similar technology. See *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011) (holding that a defendant cannot escape liability by deliberately avoiding knowledge of a patent); *Monolithic Power Sys., Inc. v. O2 Micro Int’l Ltd.,* 476 F. Supp. 2d 1143, 1158 (N.D. Cal. 2007)

(denying motion to dismiss willful infringement claims where the defendant, a sophisticated market participant, was likely aware of relevant patents).

16. The extent of Apple's pre-launch patent clearance efforts remains unknown and warrants discovery to determine whether Apple failed to conduct a reasonable patent search, deliberately structured its search to avoid identifying Ginko's technology, or intentionally ignored known patents in its field before launching NameDrop®.

17. Since 2018, Ginko has publicly promoted its patented technology and described its innovative contact exchange app built around the '573 Patent in press releases and other media.

18. Ginko launched and described its patented technology at key tech industry events that Defendant and its agents regularly monitor and attend.

19. In 2019, Ginko promoted its patented technology at high-profile industry events, including TechCrunch's 2nd Annual Winter Party, SXSW 2019, and TechCrunch Disrupt San Fransisco 2019.

20. Ginko's patented technology received extensive attention at these events and generated coverage as a breakthrough technology.

21. Yahoo News and its chief tech correspondent, JP Mangalindan, covered Ginko's patented technology in its reporting of SXSW 2019.

22. Additional national media, such as NewsWatch TV, featured stories about Ginko's patented technology as a groundbreaking contact exchange app.

23. Ginko has continually engaged with the public to promote its patented technology.

24. Given Ginko's public activities with respect to the '573 Patent, it is reasonable to infer that Apple should have become aware of the '573 Patent prior to this lawsuit being filed.

**B. Defendant's Infringing Activities and Products**

25. Defendant has and continues to infringe the '573 Patent by making, using, selling, and/or offering for sale the Infringing Devices in the United States, including this judicial district, and importing into the United States the Infringing Devices that are sold in this judicial district.

26. The products that are the subject of this Complaint (the "Infringing Devices") include the Apple iPhone 16 Pro, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 14 Pro, iPhone 14 Plus, iPhone 14, iPhone SE (2nd & 3rd Generation), iPhone 13 Pro Max, iPhone 13 Pro, iPhone 13 Mini, iPhone 13, iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12 Mini, iPhone 12, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR, and Apple Watch Series 7, Apple Watch Series 8, Apple Series 9, Apple Watch Series 10, Apple Watch SE (2nd Generation), Apple Watch Ultra, and Apple Watch Ultra 2.

27. The "NameDrop®" feature was made available to the Infringing iPhones through the iOS 17 update, which was released on September 18, 2023.[5]

28. The "NameDrop®" feature was made available to the Infringing Watches through the watchOS10.1 update, which was released on October 25, 2023.[6]

29. The "NameDrop®" feature "allows users to easily share contact information by simply bringing their iPhone devices together or by bringing an iPhone and Apple Watch

---

[5] *iOS 17 is available today,* APPLE NEWSROOM (Sep. 18, 2023), https://www.apple.com/newsroom/2023/09/ios-17-is-available-today/.

[6] *watchOS 10 is available today*, APPLE NEWSROOM (Sep. 18, 2023), https://www.apple.com/newsroom/2023/09/watchos-10-is-available-today. *See also* Hall, *watchOS 10.1 for Apple Watch now available with double tap gesture and NameDrop,* 9TO5MAC (Oct. 25, 2023, 10:03 AM), https://9to5mac.com/2023/10/25/watchos-10-1-release.

together."[7] NameDrop's core functionality depends on detecting device location to initiate the data exchange.

30. The Infringing Devices have a processor and a memory, which together implement the NameDrop® feature. These devices identify, receive, send, and process user data for sharing between Apple devices in a network.

31. The memory of the Infringing Devices includes computer-executable instructions that, when executed by the processor, perform the steps of identifying a potential contact, receiving a request to share user data, sending communications to initiate data exchange, and completing the exchange once both parties confirm.

32. NameDrop® activates when a primary user holds their iPhone or Apple Watch a few centimeters from another user's iPhone or Apple Watch. As Apple instructs, "[a] glow will emerge from both devices, and Apple Watch vibrates to indicate a connection is being made." The users keep the devices near each other until NameDrop® appears on both screens, at which point both users are prompted to share contact information.[8]

33. Through NameDrop®, Apple's Infringing Devices identify the other user as a potential contact and send that user a request to become a contact. Depending on permission settings, the primary user's device transmits communications to initiate the data exchange. If the potential contact accepts the communication, both users become contacts and share corresponding user data.

---

[7] *Secure AirDrop and NameDrop*, APPLE SUPPORT (Jan. 10, 2024) https://support.apple.com/guide/personal-safety/secure-airdrop-and-namedrop-ips7d84d2cdc/web.
[8] *iPhone User Guide, Use NameDrop on iPhone to share your contact info*, APPLE SUPPORT https://support.apple.com/guide/iphone/namedrop-iphone-share-contact-info-iph1b6c664b7/ios (last visited on Jul. 17, 2024).

34. Apple's NameDrop® feature enforces a strict threshold-based proximity requirement before permitting any data transfer. Apple's own materials confirm NameDrop® does not function unless two devices are within a few centimeters of each other, thereby receiving, from the potential contact, a first location.

35. The '573 Patent treats short-range signals (Bluetooth, UWB, Wi-Fi) as valid methods for location determination. NameDrop® operates via AirDrop[9] and uses Bluetooth Low Energy (BLE) and peer-to-peer Wi-Fi technology—and may include Ultra-Wideband (UWB)—to discover and communicate with nearby devices.[10]

36. The '573 Patent states "the user device may include a location detection function that uses peer-to-peer signals with a user device of another user located within a proximity . . .". '573 Patent, 6:21-24. NameDrop® receives location data sufficient to determine when a second device's location is within a threshold distance.

37. The '573 Patent states that 'location' can be computed by "calculating the distance between the user device and other user devices." '573 Patent, 8:38–40. NameDrop® calculates the distance between the user device and other user devices to determine whether the two devices are within NameDrop's proximity threshold.

38. Claim 12, which depends from Claim 11, claims "[t]he system of claim 11, wherein the first location is an address, and wherein the second location is a geolocation that is proximate the first location."

---

[9] *Apple Personal Safety User Guide, Secure NameDrop*, APPLE SUPPORT https://support.apple.com/guide/personal-safety/secure-namedrop-ips97e16d3b1/1.0/web/1.0 (last visited on Feb. 3, 2025).

[10] *AirDrop Security*, APPLE PLATFORM SECURITY (Feb. 18, 2021), https://support.apple.com/guide/security/airdrop-security-sec2261183f4/web

39. The ‘573 Patent states “the location component may include, for example, a global positioning system module or geolocation module…” ‘573 Patent, 4:15–16. The ‘573 Patent also states “the second location matches the first location in a case that the first location and the second location are within a threshold distance…The threshold distance can be characterized by being a relatively small distance.” ‘573 Patent 15:54-59. Location in the ‘573 Patent is not limited to a fixed set of coordinates; it includes proximity-based signals like Bluetooth or UWB to detect whether devices are within the threshold distance.

40. Apple’s attempt to narrow “location” to only absolute coordinates contradicts the intrinsic evidence, including the file history, and contravenes established case law.

41. The ‘573 Patent states “the location of the user device matches the location of the marker if the location of the user device and the location of the marker are within a predefined distance.” ‘573 Patent, 16:21–24.

42. Defendant has been infringing and is inducing infringement of the ‘573 Patent by actively and knowingly inducing purchasers and owners of Infringing Devices to make, use, sell, offer for sale, or import the Infringing Devices that infringe the ‘573 Patent.

43. Apple actively encourages users to infringe the ‘573 Patent through official user guides[11], support pages, advertisements, and promotional materials that demonstrate how to use NameDrop in a manner that directly maps to the patented claims. Apple’s public documentation and marketing campaigns provide clear evidence of Apple’s intent to induce infringement under 35 U.S.C. § 271(b) and (c).

---

[11] *iPhone User Guide, Use NameDrop on iPhone to share your contact info*, APPLE SUPPORT https://support.apple.com/guide/iphone/namedrop-iphone-share-contact-info-iph1b6c664b7/ios (last visited on Jul. 17, 2024).

44. Apple's promotional videos, YouTube tutorials[12], and marketing campaigns amplify this inducement. Apple's advertisements on its website, YouTube, and media platforms prominently feature the infringing use of NameDrop. These materials encourage users to use the feature in a way that directly infringes the '573 Patent, reinforcing Apple's intent to induce infringement.

45. Apple's WWDC 2023 keynote presentation further demonstrates its active inducement of infringement by publicly showcasing NameDrop's infringing features. During the keynote, Apple's executives demonstrated how NameDrop works, emphasizing how contact information is shared.[13]

46. Apple explicitly instructs and expects users to practice the steps of the patented methods. Because these official Apple-provided instructions are the only way to use NameDrop, users directly infringe the '573 Patent when following Apple's guidance.

47. Courts have consistently found that marketing materials, user guides, and promotional materials can establish inducement at the pleading stage. See *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (holding that "[e]vidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe"); see also *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.,* 785 F.3d 625, 631 (Fed. Cir. 2015) ("Encouraging or instructing others to use a product in an infringing manner is evidence of active inducement.").

---

[12] *How to use NameDrop on iPhone*, https://www.youtube.com/watch?v=aZL5D1k-4aI (last visited Jan. 27, 2025).
[13] WWDC 2023 (25:32 mark) — June 5 | Apple https://youtu.be/GYkq9Rgoj8E

48. Defendant continues to market, promote, and train consumers on NameDrop's infringing functionalities, despite having knowledge of the '573 Patent at least since the filing of the initial Complaint in this lawsuit. Defendant's persistent and widespread promotion of NameDrop, coupled with its official user guides, constitutes willful and knowing infringement under of 35 U.S.C. § 271(b) and (c).

49. Apple further contributorily infringes the '573 Patent under 35 U.S.C. § 271(c) by offering and distributing the Infringing Devices with the NameDrop feature, which is especially designed or adapted to practice the claimed methods and lacks any substantial non-infringing use. NameDrop's *sole or primary purpose* is to facilitate the exchange of contact information—as claimed in the '573 Patent when two devices are in certain locations. Apple's promotional materials, user guides, and the technical structure of NameDrop confirm that it operates exclusively to enable contact-sharing when devices are in close proximity via Bluetooth Low Energy (BLE) and peer-to-peer Wi-Fi. Apple does not market or identify any independent, non-infringing application for NameDrop, nor does the feature provide any meaningful functionality outside the infringing contact-exchange process. Accordingly, NameDrop constitutes a component "especially made or especially adapted for use" in infringement of the '573 Patent without substantial non-infringing uses, rendering Apple liable for contributory infringement.

50. The Infringing Devices infringe at least claims 10, 11, and 14 of the '573 Patent.

51. Upon information and belief, future iterations of the Infringing Devices will infringe the '573 Patent.

**COUNT I**

(Infringement of the '573 Patent)

52. Ginko repeats and realleges each of the preceding paragraphs as though fully set forth herein.

53. Defendant has been and is infringing the ‘573 Patent, including at least claims 10, 11, and 14, by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Infringing Devices in violation of 35 U.S.C. § 271(a) through (c).

54. Defendant's acts of infringement of the ‘573 Patent have caused and will continue to cause Ginko damages for which Ginko is entitled to compensation pursuant to 35 U.S.C. § 284.

55. Defendant's acts of infringement of the ‘573 Patent have caused and will continue to cause immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Ginko has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Ginko, LLC requests judgment against Apple, Inc., as follows:

A. Adjudging that Apple has infringed and has actively induced infringement of the ‘573 Patent, in violation of 35 U.S.C. § 271(a) through (c);

B. Granting an injunction permanently enjoining Apple, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the ‘573 Patent absent a license to Apple by Ginko;

C. Ordering Apple to account and pay damages adequate to compensate

Ginko for Apple's infringement of the '573 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

D. Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

E. If Discovery and Evidence in this matter so warrants, declaring this case exceptional and awarding Ginko its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

F. Awarding such other and further relief as this Court deems just and proper.

Dated: February 3, 2025

Respectfully Submitted,

*/s/ Michael C. Smith*

**SCHEEF & STONE LLP**
Michael C. Smith
State Bar No.: 18650410
Michael.Smith@solidcounsel.com
113 East Austin St.
Marshall, TX 75670
Phone: 903.938.8900

**HUSCH BLACKWELL LLP**
Rudolph A. Telscher, Jr. (pro hac vice)
rudy.telscher@huschblackwell.com
8001 Forsyth Blvd, Suite 1500
St. Louis, MO 63105
314-380-1500 Telephone

Jeffer Ali (pro hac vice)
Jeffer.Ali@huschblackwell.com
80 South Eighth Street, Suite 4800
Minneapolis, MN 55402
612-852-3610 Telephone

**THE SIMON LAW FIRM, P.C.**
Anthony G. Simon (pro hac vice)
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com

***Attorneys for Plaintiff Ginko, LLC***

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on February 3, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing that the Court's CM/ECF system.

*/s/ Michael C. Smith*
Michael C. Smith