UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GINKO, LLC, | § | No. 1:24-cv-1279-DAE |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| *Defendant*. | § | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Apple Inc.'s ("Apple" or "Defendant") Opening Brief in Support of Its Partial Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"), filed on February 18, 2025. (Dkt. # 31.) Plaintiff Ginko, LLC ("Ginko" or "Plaintiff") filed its Response on March 4, 2025 (Dkt. # 32), and Defendant replied on March 11, 2025 (Dkt. # 33).

The Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda filed in support of and against the motion, the Court **GRANTS IN PART AND DENIES IN PART** Apple's Motion to Dismiss for the following reasons.

## BACKGROUND

This case involves the alleged infringement of Ginko's U.S. Patent No. 11,025,573 (the "'573 Patent"), which is titled, "Method and Apparatus for Data Sharing" and was issued on June 1, 2021. (Dkt. # 29-1.) The patent covers a method of data-sharing, including sharing contact information, between two devices based on the relative proximity of the devices. (Id. at 1:15–18.) Ginko contends that Apple iPhones and Watches with Apple's NameDrop feature ("the Infringing Devices") infringe the '573 patent. (Dkt. # 29 at ¶¶ 26–34, 50.)

On October 24, 2024, Ginko filed the instant suit alleging that Apple has infringed and continues to infringe on the '573 patent in violation of 35 U.S.C. § 271(a), (b), and (c). (Dkt. # 1 at ¶ 28.) After Apple filed an Opposed Motion to Dismiss (Dkt. # 22), Ginko amended its Complaint (Dkt. # 29). Ginko's First Amended Complaint ("Amended Complaint"), now the operative complaint, similarly asserts claims of direct infringement, induced infringement, and contributory infringement under 35 U.S.C. § 271(a), (b), and (c). (Dkt. # 29 at ¶ 53.) Apple moves to dismiss Ginko's claims of indirect infringement under 35 U.S.C. § 271(b) and (c). (Dkt. # 31 at 1.)

# LEGAL STANDARD

## I. Pleading Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is "a purely procedural question not pertaining to patent law." McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 (Fed. Cir. 2007); see also Repairify, Inc. v. Keystone Auto. Indus., Inc., 2022 WL 2479930, at *1 (W.D. Tex. 2022). Therefore, though this case involves patent infringement, the claim is still subject to the general pleading requirements of Rule 12(b)(6). See Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1327, 1376-77 (Fed. Cir. 2017).

Review of a 12(b)(6) motion is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissal with prejudice, "unless it is clear that the defects

are incurable[.]" Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## II. Indirect Infringement

Indirect infringement is an umbrella term encompassing both induced infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c). Network Sys. Techs, LLC v. Qualcomm Inc., No. 1:22-CV-01131, 2023 WL 11833572, at *5 (W.D. Tex. Jul. 21, 2023). To state a claim of induced patent infringement under § 271(b), the complaint must plausibly allege that the defendant: (1) knew of the patent; (2) knowingly induced the infringing acts, and (3) possessed a specific intent to encourage another's infringement of the patent. Textile Comput. Sys., Inc. v. Broadway Nat'l Bank, 620 F. Supp. 3d 557, 564 (W.D. Tex. 2022); Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009).

Contributory infringement of a patented device, on the other hand, involves the sale, offer to sell, or importing of a component of the device, which is "not itself technically covered by the claims of a product or process patent." Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990). To state a claim for contributory infringement under § 271(c), the complaint must demonstrate (1) knowledge of the patent, (2) knowledge of the acts alleged to be infringement, (3) that the accused infringer's component is not

suitable for a substantial non-infringing use; and (4) the accused infringer's component is material to practicing the claimed invention.[1] BillJCo.. LLC v. Apple Inc., 583 F. Supp. 3d 769, 781-82 (W.D. Tex. 2022); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010); Personalized Media Commc'ns, LLC v. Apple Inc., No. 2:15-CV-1366-JRG, 2021 WL 2688620, at *3 (E.D. Tex. Jan. 8, 2021).

Both induced and contributory infringement require that the plaintiff plead specific facts sufficient to show that the accused infringer had actual knowledge of the patents-in-suit or was willfully blind to the existence of the patents-in-suit. Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.); Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). A showing of willful blindness requires that "(1) the defendant must subjectively

[1] Not every court appears to impose this fourth requirement. See, e.g., Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1356-57 (Fed. Cir. 2018); Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1381 (Fed. Cir. 2017). However, this element is consistently used by the Waco Division of the Western District of Texas, other courts in this Circuit, the District of Delaware, and several Federal Circuit cases. Thus, this Court takes the same approach.

believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Global-Tech, 563 U.S. at 76

DISCUSSION

Apple asserts that Ginko's Amended Complaint fails to plausibly allege indirect infringement of all asserted claims. (Dkt. # 31 at 1.) Specifically, Apple contends that Ginko "fails to allege any facts that support its claim that Apple knew of the Asserted Patent or knowingly took…affirmative acts [that induced a third party to infringe the patent]." (Dkt. # 31 at 1.) According to Apple, the allegations contained in the Amended Complaint are merely speculative and do not permit a reasonable inference that Apple knew of, or was willfully blind to, the '573 Patent, a threshold requirement of induced and contributory infringement claims. (Dkt. # 31 at 3–6.) As such, Apple argues, the Court should dismiss Ginko's indirect infringement claims under 35 U.S.C. § 271(b) and (c). (Dkt. # 31 at 1.)

In response, Ginko contends that it has sufficiently alleged Apple's post-suit knowledge of the '573 Patent, which can satisfy the knowledge requirement of indirect infringement claims. (Dkt. # 32 at 3–4.) The Amended Complaint alleges that "Defendant had knowledge of the '573 Patent at least as of the date of the initial Complaint in this lawsuit." (Dkt. # 29 at ¶ 12.) In Ginko's

view, this allegation adequately supports its indirect infringement claims. (Dkt. # 32 at 3–4.)[2]

Apple points out, however, that as Ginko acknowledges, most Fifth Circuit cases effectively bifurcate claims of indirect infringement into post-suit and pre-suit conduct. (Dkt. # 33 at 2.) Thus, while Apple does not contest that it has post-suit knowledge of the patent, Apple asserts that (1) Ginko still does not allege pre-suit knowledge for any pre-suit indirect infringement claims; and (2) Ginko does not allege post-suit affirmative acts of inducement for any post-suit indirect infringement claims. (Id. at 1.) Accordingly, the Court should dismiss all of Ginko's indirect infringement claims, both pre-suit and post-suit. (Id.)

This Court follows the bifurcated approach of the Western District. Network System, 2023 WL 11833572, at *5–6. While post-suit knowledge can support a claim for post-suit indirect infringement, it does not support a claim for pre-suit indirect infringement. See id. at *9–10, 12 (allowing post-suit induced infringement claims to proceed because the plaintiff had adequately pleaded post-suit knowledge, but not permitting pre-suit induced infringement claims to proceed because the plaintiff deficiently pleaded pre-suit knowledge); BillJCo, 583 F. Supp. 3d at 776, 781, 782.

[2] The Court notes that Ginko does not attempt to argue in its Response that it adequately pleaded *pre-suit* knowledge. (See Dkt. # 32.)

Thus, to survive a 12(b)(6) motion to dismiss as to any pre-suit indirect infringement claims, Ginko must adequately plead pre-suit knowledge. See id. And, to survive a 12(b)(6) motion to dismiss as to any post-suit infringement claims, Ginko must sufficiently allege that Apple engaged in infringing conduct *after* the filing of the complaint. See BillJCo, 583 F. Supp. 3d at 778 (finding that a plaintiff can sufficiently plead a post-suit willful infringement claim "[s]o long as the complaint also adequately alleges that the defendant is continuing its purportedly infringing conduct");[3] BillJCo, LLC v. Cisco Systems, Inc., No. 2:21-CV-00181, 2021 WL 6618529, at *6 (E.D. Tex. Nov. 30, 2021) (holding that the plaintiff's induced infringement claim will survive defendant's motion to dismiss if it adequately pleads "that the Defendants had knowledge of the Asserted Patents for at least some time *during the infringement period*.") (emphasis added); see also Insituform Techs., Inc. v. Cat Contracting, Inc., 161 F.3d 688, 695 (Fed. Cir. 1998) (reversing a finding of liability of induced

[3] While the district court makes this finding as to willful infringement claims, it applies the same approach to indirect infringement claims. See SpaceTime3D, Inc. v. Apple, Inc., No. 6:22-CV-00149, 2022 WL 16858515, at *4 (W.D. Tex. Nov. 10, 2022) (finding plaintiff sufficiently pleaded post-suit indirect infringement because it was reasonable to infer defendant "*still* induces its customers to infringe in the manner that [plaintiff] alleges in its Complaint") (emphasis added); Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd., No. 6:20-CV-00507; 2023 WL 5426743, at *5 (W.D. Tex. June 27, 2023) (denying defendant's motion to dismiss plaintiff's post-suit indirect infringement claim because the complaint contained specific allegations that defendant continued to induce infringement after the complaint was filed).

infringement because liability could not be predicated on any acts that occurred prior to defendant having notice of the patent).

The Court will first analyze Ginko's pre-suit indirect infringement claims before turning to Ginko's post-suit indirect infringement claims.

## I. Pre-Suit Indirect Infringement Claims

Apple argues that Ginko has failed to adequately plead the first two elements of pre-suit induced infringement, knowledge of the patent and knowing inducement of the infringing acts, and the first element of pre-suit contributory infringement, knowledge of the patent (Dkts. ## 31 at 1, 33 at 1.) The Court agrees.

In its Amended Complaint, Ginko makes three primary sets of allegations related to Apple's pre-suit knowledge of the '573 Patent: (1) Apple's status as a major technology company makes it "likely" that Apple conducted a pre-launch patent search that "would have been expected" to identify the '573 Patent; (2) Ginko publicly promoted the '573 Patent, including at events regularly monitored and attended by Apple; and (3) Ginko's patented technology received "extensive attention" and generated news coverage as a "groundbreaking" app. (Dkt. # 29 at 4–5.)

First, Ginko's allegations related to Apple's presumed patent clearing practices do not raise a reasonable inference that Apple knew of the '573 Patent.

The Amended Complaint states that "Apple tracks developments in relevant technology areas through industry conferences, internal IP reviews, and patent database searches," which makes it reasonable to infer that Apple "may have become aware of the '573 Patent." (Dkt. # 29 at ¶ 13.) Furthermore, as Apple is a "major technology company," it "routinely performs patent clearance searches before introducing new features into competitive markets." (Id. at ¶ 14.) Apple "has previously pursued patent enforcement actions against other technology companies, demonstrating its recognition of the importance of patent rights in its field." (Id.) And Apple "likely conducted a pre-launch patent search," which "would have been expected to identify the '573 Patent" had Apple followed "standard industry procedures and reviewed patents in relevant classifications." (Id.)

Even "accept[ing] all well-pleaded facts as true" and "viewing them in the light most favorable to the plaintiff," the Court does not find these allegations to be sufficient. In re Katrina, 495 F.3d at 205. In general, allegations of pre-suit knowledge based on the size of the defendant's company, general monitoring activities, familiarity with patent enforcement, and general due diligence patent searches fall short of what is required even at the motion to dismiss stage. See, e.g., Network System, 2023 WL 11833572, at *6 (holding that allegations of the size and prominence of defendant's company, defendant's efforts to seek patents

for themselves, and generic allegations of defendant's monitoring activities do not sufficiently demonstrate pre-suit knowledge); Neonode, 2023 WL 5426743, at *3 (concluding that allegations of defendant monitoring industry press to be too speculative to sufficiently plead actual knowledge); Pacing Techs., LLC v. Garmin Int'l., Inc., No. 12-CV-1067, 2013 WL 444642, at *2 (S.D. Cal. Feb. 5, 2013) (holding that pre-suit knowledge based on defendant regularly filing patent applications and performing due diligence patent searches was "too speculative to support a reasonable inference that [defendant] knew of the patent prior to commencement of [the] suit."). Ginko's allegations, without more, are therefore too speculative to support a reasonable inference that Apple knew of the '573 Patent before commencement of this suit.

Second, Ginko's allegations regarding Apple's possible exposure to its promotional efforts likewise fail to adequately plead knowledge. Ginko states that, "[s]ince 2018, Ginko has publicly promoted its patented technology" in press releases and other media. (Dkt. # 29 at ¶ 17.) Ginko further promoted its technology at certain "high-profile industry events" and at "key tech industry events" that Apple regularly monitors and attends. (Id. at ¶¶ 18, 19.) Courts in the Western District have rejected arguments similar to those Ginko raises here. See Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc., 6:20-cv-00317, 2021 WL 4555608, at *2 (W.D. Tex. Oct. 4, 2021) ("[T]he Court refuses to find that a vendor's

attendance at a trade show raises a reasonable inference that the vendor has knowledge of every other attending vendors' patents, even if other vendors' products are 'well-known' and marked."); Neonode, 2023 WL 5426743, at *3 (finding that the fact that several articles were published discussing the patent at issue "only speculates that [defendant] read the articles, and therefore is not sufficient[]… to establish actual knowledge.") Accordingly, the Court finds these allegations do not give rise to the reasonable inference that Apple knew of the '573 Patent.

Ginko's final set of allegations fares no better. The Amended Complaint asserts that "Ginko's patented technology received extensive attention at [high-profile industry] events and generated coverage as a breakthrough technology." (Dkt. # 29 at ¶ 20.) Indeed, "Yahoo News and its chief tech correspondent, JP Mangalindan, covered Ginko's patented technology in its reporting of SXSW 2019." (Id. at ¶ 21.) And other national media has "featured stories about Ginko's patented technology as a groundbreaking contact exchange app." (Id. at ¶ 22.) Given these public activities, then, Ginko argues "it is reasonable to infer that Apple should have become aware of the '573 Patent prior to this lawsuit being filed." (Id. at ¶ 24.) Again, these allegations are too speculative to raise an inference of knowledge. See Kirsch, 2021 WL 4555608, at

*2 (rejecting argument based on products being "well-known" in the market); Neonode, 2023 WL 5426743, at *3.

Nor do the allegations as stated in the Amended Complaint support an inference that Apple was willfully blind to the '573 Patent. Willful blindness requires a showing that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Global-Tech, 563 U.S. at 769. It requires more than mere recklessness or negligence. Id. at 769–70. The statements that Apple "may have become aware of the '573 Patent" or that Apple "should have become aware of the '573 Patent" are vague and speculative and do not support a reasonable inference that Apple subjectively believed there was a high probability the '573 Patent existed. Id. at 769–70. Similarly, allegations that Apple "likely" conducted a pre-launch patent search that "would have been expected" to reveal the '573 Patent if Apple "followed standard industry procedures" do not evince any "deliberate actions" taken by Apple to avoid learning of the patent. See Signode Indust. Grp. LLC v. Samuel, Son & Co., Ltd., No. 2:24-CV-00080, 2024 WL 3543408, at *4 (E.D. Tex. July 24, 2024) (concluding the absence of an allegation of deliberate actions taken by defendants to be dispositive at the motion to dismiss stage).

Indeed, Ginko does not argue this point in its Response and appears to concede that the Amended Complaint does not sufficiently plead pre-suit knowledge or willful blindness. (See Dkt. # 32.) Ginko does argue in its Amended Complaint that "Apple's failure to acknowledge the '573 Patent—despite its well-documented patent monitoring and enforcement practices—raises a strong inference of willful blindness," but the two cases it cites in support of this assertion are not analogous here. (Id. at ¶ 15, citing to Global-Tech, 563 U.S. at 768, and Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 476 F. Supp. 2d 1143, 1158 (N.D. Cal. 2007).)[4]

The Court thus finds that Ginko fails to plausibly allege pre-suit knowledge or willful blindness as is required for pre-suit induced infringement and pre-suit contributory infringement claims. Accordingly, Apple's motion to dismiss Ginko's pre-suit indirect infringement claims under 35 U.S.C. § 271(b) and (c) is **GRANTED**.

---

[4] In the first case Ginko cites, Global-Tech, the Supreme Court held that the evidence was "more than sufficient for a jury to find" that the defendant was willfully blind to the infringing nature of its product. 563 U.S. at 769–71. However, key to this finding was evidence that the defendant copied an overseas model of the plaintiff's product, knew the product was an innovation in the U.S. market, and deliberately avoided confirming whether the product was patented by withholding material information from the attorney it hired to conduct the "right to use" analysis. Id. The facts Ginko has alleged here pale in comparison to those supporting the finding in Global-Tech. As for the second case Ginko cites, Monolithic Power, the Court has reviewed the case and does not find any support for Ginko's proposition. See 475 F. Supp. 2d.

II. Post-Suit Indirect Infringement Claims

With respect to Ginko's post-suit indirect infringement claims, Apple does not contest that Ginko sufficiently pleads post-suit knowledge of the '573 Patent. (See Dkts. ## 31, 33.) Indeed, post-suit knowledge is easily met here. See BillJCo, 583 F. Supp. 3d at 781 ("The Complaint alleges that [defendant] has known of the Asserted Patents and its inducement at least by the time [plaintiff] filed its Complaint… Accordingly, [plaintiff's] post-suit induced infringement claim is well-pleaded.").

However, Apple does contest that Ginko has sufficiently pleaded post-suit affirmative acts of inducement. (Dkt. # 33 at 3–4.) According to Apple, Ginko cannot show that Apple (1) knowingly induced any infringing acts, or (2) possessed a specific intent to encourage another's infringement of the patent. (Id.) As such, Ginko's post-suit indirect infringement claims should be dismissed. (Id. at 4.)

Inducement exists "where there 'is evidence of active steps taken to encourage direct infringement.'" Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp., 785 F.3d 625, 631 (Fed. Cir. 2015). Such evidence can be found in "advertising an infringing use or instructing how to engage in an infringing use." Id. While instructions must do more than "describe" an infringing mode, instructions that "evidence intent to encourage infringement" are sufficient. Id.

Intent can be proven by circumstantial evidence. Barry v. Medtronic, Inc., 914 F.3d 1310, 1334 (Fed. Cir. 2019). Indeed, "advertising that your product can be used in [an infringing manner] gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method." In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1341–42 (Fed. Cir. 2012).

The Amended Complaint alleges that Apple "continues to market, promote, and train consumers on NameDrop's infringing functionalities, despite having knowledge of the '573 Patent at least since the filing of the initial Complaint in this lawsuit." (Dkt. # 29 at ¶ 48.) Ginko states that Apple "actively encourages users to infringe the '573 Patent through official user guides, support pages, advertisements, and promotional materials that demonstrate how to use NameDrop in a manner that directly maps to the patented claims," citing a User Guide on Apple's support page as evidence. (Id. at ¶ 43.)

Additionally, Ginko alleges that "Apple's promotional videos, YouTube tutorials, and marketing campaigns amplify this inducement." (Id. at ¶ 44.) In support of this assertion, Ginko links a YouTube tutorial posted by Apple on how to use NameDrop. (Id. at ¶ 44 n.12.) "Apple's advertisements on its website, YouTube, and media platforms prominently feature the infringing use of NameDrop." (Id. at ¶ 44.) According to Ginko, "[t]hese materials encourage users

to use the feature in a way that directly infringes the ‘573 Patent, reinforcing Apple’s intent to induce infringement.” (Id.)

The Amended Complaint goes on to state that “Apple’s WWDC 2023 keynote presentation further demonstrates its active inducement of infringement by publicly showcasing NameDrop’s infringing features.” (Dkt. # 29 at ¶ 45.) “During the keynote, Apple’s executives demonstrated how NameDrop works, emphasizing how contact information is shared.” (Id.) Ginko cites this keynote presentation, which is uploaded to YouTube. (Id. at ¶ 44 n.13.) Ginko further alleges that “Apple explicitly instructs and expects users to practice the steps of the patented methods,” and as “these official Apple-provided instructions are the only way to use NameDrop, users directly infringe the ‘573 Patent when following Apple’s guidance.” (Id. at ¶ 46.) These actions evince Apple’s intent to induce infringement, Ginko argues. (Id. at ¶¶ 43, 44.)

Apple contends that the only actual acts of inducement Ginko alleges, a keynote presentation and a promotional YouTube tutorial, took place before the Complaint was filed and therefore cannot support post-suit indirect infringement claims. (Dkt. # 33 at 3.) Apple notes that the keynote presentation that was streamed on YouTube occurred on June 5, 2023, and the YouTube tutorial was published a year before the Complaint was filed. (Id.) The other statements contained in the Amended Complaint, Apple asserts, are merely “rote allegations”

which do not show any inducement, nor do they show a specific intent to encourage infringement. (Id.)

As an initial matter, the Court is not convinced that the keynote presentation and YouTube tutorial cited in Ginko's Amended Complaint do not support an inference that Apple continued to engage in the alleged acts of inducement after the filing of the complaint. Although both videos were uploaded prior to the filing of the original complaint in this case, they remain publicly available on YouTube. See How to use NameDrop on iPhone, https://www.youtube.com/watch?v=aZL5D1k-4aI (last visited Sept. 26, 2025); WWDC 2023 — June 5, https://www.youtube.com/watch?v=GYkq9Rgoj8E (last visited Sept. 26, 2025). Users can still view the videos from Apple's official channels and receive the instructions Ginko alleges to be infringing. (Dkt. # 29 at ¶¶ 44, 45). References to these types of materials are routinely found to be sufficient at the pleading stage for a claim of indirect infringement. AlexSam, Inc. v. Aetna, Inc., 119 F.4th 27, 46 (Fed. Cir. 2024) (finding references to brochures and other promotional materials to be sufficient to support a plausible inference of inducement); DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1305 (Fed. Cir. 2006) (noting that "[e]vidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe");

Radiant Vision Sys., LLC v. Admesy B.V., No. 1:21-CV-01115, 2022 WL 22869782, at *5 (W.D. Tex. Nov. 9, 2022). The Court is thus not persuaded that the timing of the videos' upload alone precludes a reasonable inference of continued inducement. See SpaceTime3D, 2022 WL 16858515, at *4 (rejecting defendant's argument that documents created before it had knowledge of the asserted patents could not support plaintiff's post-suit indirect infringement claims at the motion to dismiss stage).

Even setting aside the keynote presentation and promotional YouTube tutorial, however, Ginko has pleaded sufficient factual content that allows this Court to draw the reasonable inference that Apple knowingly induced a third-party to infringe the patent and had specific intent to induce the patent infringement. Ginko's Amended Complaint pleads that Apple encourages users to directly infringe the '573 Patent through its promotional videos, marketing campaigns, and user guides. (Dkt. # 29 at 9–11.) In support, Ginko cites directly to a user guide published on Apple's support page which instructs users how to use NameDrop. (Id. at ¶ 43, n.11.) Ginko alleges that these instructions are the only way to use NameDrop and that these instructions "directly map[] to the patented claims." (Id. at ¶¶ 43, 46.) The Court finds that these instructions do more than merely "describe" an infringing use but rather "give[] rise to a reasonable inference that

[Apple] intend[s] to induce [its] customers" to use NameDrop in an infringing manner. In re Bill of Lading, 681 F.3d at 1341–42.

This conclusion is in line with other courts in this jurisdiction that have found allegations regarding marketing materials, user guides, and promotional materials to sufficiently establish inducement and specific intent at the pleading stage. See, e.g., Neonode, 2023 WL 5426743, at *5 (denying a motion to dismiss of post-suit indirect infringement where the complaint pointed to defendant's support page that provided instructions of how to infringe); Radiant Vision, 2022 WL 22869782, at *5 (plaintiff's allegations that defendant "instructs its customers and/or third parties to infringe at least by providing user manuals, product documentation, advertising, marketing, and other materials that facilitate" direct infringement "passe[s] muster at the motion to dismiss stage"); Textile Comput. Sys., 620 F. Supp. 3d at 565 ("An allegation that a party, upon having knowledge of the patent and the alleged infringing acts, provided instructions on how to use a product in an infringing manner is sufficient to show a specific intent to induce infringement."); BillJCo, 2021 WL 6618529, at *6 (finding that, at the 12(b)(6) stage, plaintiff's allegations that defendants "intentionally instruct[ ] infringing use through training videos, demonstrations, brochures, installation and user guides" with the inclusion of hyperlinks to specific examples of defendants'

literature support the reasonable inference of specific intent); see also DSU Med. Corp., 471 F.3d at 1305.

To meet the "low bar required at the pleading stage," Ginko's allegations are therefore sufficient. Neonode, 2023 WL 5426743, at *5. Accordingly, Apple's motion to dismiss Ginko's post-suit indirect infringement claims under 35 U.S.C. § 271(b) and (c) is **DENIED**.

## CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Apple's Motion to Dismiss. (Dkt. # 31.) Specifically, the Court:

- **GRANTS** Apple's motion to dismiss Ginko's pre-suit induced infringement claims under 35 U.S.C. § 271(b). Ginko's pre-suit induced infringement claims are hereby **DISMISSED WITHOUT PREJUDICE**.
- **GRANTS** Apple's motion to dismiss Ginko's pre-suit contributory infringement claims under 35 U.S.C. § 271(c). Ginko's pre-suit contributory infringement claims are hereby **DISMISSED WITHOUT PREJUDICE**.
- **DENIES** Apple's motion to dismiss Ginko's post-suit induced infringement claims under 35 U.S.C. § 271(b).
- **DENIES** Apple's motion to dismiss Ginko's post-suit contributory infringement claims under 35 U.S.C. § 271(c).

**IT IS SO ORDERED.**

**DATED**: Austin, TX, September 26, 2025

David Alan Ezra
Senior United States District Judge