**UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| GINKO, LLC,<br><br>        *Plaintiff*,<br><br>        v.<br><br>APPLE INC.,<br><br>        *Defendant*. | Civil Action No.: 1:24-cv-01279-DAE<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S ANSWER AND
COUNTERCLAIM TO PLAINTIFF GINKO, LLC'S FIRST AMENDED
COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Apple Inc. by and through its attorneys, files its Answer and Counterclaim to

Plaintiff Ginko, LLC's ("Plaintiff" or "Ginko") First Amended Complaint for Patent Infringement

("Complaint").

**ANSWER**

Apple responds to the allegations contained in the numbered paragraphs of Ginko's

Complaint below.  Apple denies all allegations and characterizations in Ginko's Complaint unless

expressly admitted in the following paragraphs.

**PRELIMINARY STATEMENT[1]**

**Complaint No. 1:** This is a civil action for patent infringement under the patent laws of

the United States, 35 U.S.C. § 1 et seq., of Ginko's United States Patent No. 11,025,573 (the "'573

---

[1] Apple repeats the headings set forth in the Complaint to simplify comparison of the Complaint and this Answer.  In doing so, Apple makes no admissions regarding the substance of the headings or any other allegations of the Complaint.  Unless otherwise stated, to the extent that a particular heading can be construed as an allegation, Apple specifically denies all such allegations.  Where necessary, Apple makes amendments to Ginko's headings in brackets.

Patent") based on Defendant's manufacture, use, importation, offer for sale, and sale of devices in the United States that infringe the '573 Patent, including the Apple iPhone 16 Pro, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 14 Pro, iPhone 14 Plus, iPhone 14, iPhone SE (2nd & 3rd Generation), iPhone 13 Pro Max, iPhone 13 Pro, iPhone 13 Mini, iPhone 13, iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12 Mini, iPhone 12, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR (collectively, the "Infringing iPhones"), and Apple Watch Series 7, Apple Watch Series 8, Apple Series 9, Apple Watch Series 10, Apple Watch SE (2nd Generation), Apple Watch Ultra, and Apple Watch Ultra 2 (collectively, the "Infringing Watches"). Together, the Infringing iPhones and the Infringing Watches are known as the "Infringing Devices."

**Answer to Complaint No. 1:**  To the extent Paragraph 1 calls for a legal conclusion, no response is required.  To the extent that a response is required, Apple admits that the Complaint purports to allege claims for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.  Apple admits that it has marketed products under the following names in the United States: Apple iPhone 16 Pro, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 14 Pro, iPhone 14 Plus, iPhone 14, iPhone SE (2nd & 3rd Generation), iPhone 13 Pro Max, iPhone 13 Pro, iPhone 13 Mini, iPhone 13, iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12 Mini, iPhone 12, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR, Apple Watch Series 7, Apple Watch Series 8, Apple Watch Series 9, Apple Watch Series 10, Apple Watch SE (2nd Generation), Apple Watch Ultra, and Apple Watch Ultra 2.  Apple denies any purported allegations of infringement of United States Patent No. 11,025,573 (the "'573 Patent"), and denies any and all remaining allegations and characterizations contained in Paragraph 1.

## JURISDICTION AND VENUE

**Complaint No. 2:** This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**Answer to Complaint No. 2:** Apple admits that this Court has subject matter jurisdiction over actions for alleged patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a). Apple denies any remaining allegations and contentions contained in Paragraph 2.

**Complaint No. 3:** This Court has specific and general personal jurisdiction over Defendant in this district because of Defendant's presence in this judicial district. Defendant has availed itself of the laws of Texas. Defendant has derived substantial revenue from sales of the Infringing Devices in the State of Texas, and it has systematic and continuous business contacts with the State of Texas. Ginko's claims arise out of and relate to, in part, Defendant's contacts with the State of Texas. Defendant conducts business within the State of Texas and has a registered agent in Texas.

**Answer to Complaint No. 3:** To the extent Paragraph 3 calls for a legal conclusion, no response is required. To the extent a response is required. Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 3.

**Complaint No. 4:** Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has committed acts of infringement in this district and has regular and established places of business in this district.

**Answer to Complaint No. 4:** To the extent Paragraph 4 calls for a legal conclusion, no response is required. To the extent a response is required, Apple denies that Apple committed acts within this District giving rise to this action that has established minimum contacts with this forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple further denies that it infringes or has infringed any claim of any of

3

the '573 Patent. Apple admits that Ginko alleges in Paragraph 4 that venue is proper in this District pursuant to the cited statutes. Apple responds that, solely for purposes of this action, it does not contest that venue is proper under the cited statutes but denies that venue is convenient and has sought transfer under 28 U.S.C. § 1404. *See* Dkt. No. 42. Apple denies any remaining allegations and contentions contained in Paragraph 4.

**Complaint No. 5:** Defendant's regular and established places of business in the Western District of Texas include a 3-million square-foot campus on one hundred and thirty-three acres in Austin, which is in the process of being built.[2] The campus will employ at least 5,000 employees with job functions ranging from engineering, R&D, operations, finance, sales, and customer support.[3]

**Answer to Complaint No. 5:** To the extent Paragraph 5 calls for a legal conclusion, no response is required. To the extent a response is required, Apple admits that it has employees and facilities in the Western District of Texas. Apple denies that Apple committed acts within this District giving rise to this action that has established minimum contacts with this forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple further denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 5.

---

[2] *Apple expands in Austin* (Nov. 20, 2019), https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/

[3] *Apple to build new campus in Austin and add jobs across the US* (Dec. 13, 2018), https://www.apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/; *See also Careers at Apple*, https://www.apple.com/careers/us/work-at-apple/austin.html (last visited on Jul. 17, 2024).

**Complaint No. 6:** The new 1 billion-dollar Apple campus is less than a mile from existing facilities, including another campus that includes Apple's Americas Operation Center.[4]

**Answer to Complaint No. 6:** To the extent Paragraph 6 calls for a legal conclusion, no response is required. To the extent a response is required, Apple admits that it has facilities in the Western District of Texas. Apple denies that Apple committed acts within this District giving rise to this action that has established minimum contacts with this forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple further denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 6.

**Complaint No. 7:** Defendant has retail stores in the Western District of Texas in Austin, El Paso, and San Antonio.[5]

**Answer to Complaint No. 7:** To the extent Paragraph 7 calls for a legal conclusion, no response is required. To the extent a response is required, Apple admits that it has facilities in the Western District of Texas. Apple denies that Apple committed acts within this District giving rise to this action that has established minimum contacts with this forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple further denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 7.

---

[4] Aquila, *Apple's Austin Offices & Headquarters: History, Details & Predications* (Feb. 26, 2019), https://aquilacommercial.com/learning-center/apple-austin-offices-headquarters-history-details-predictions/
[5] *Apple Retail Stores, United States*, https://www.apple.com/retail/storelist/ (last visited on Jul. 17, 2024).

**Complaint No. 8:** Ginko is a Michigan corporation with its principal place of business at 3523 Oak Knoll Drive, Brighton, MI.

**Answer to Complaint No. 8:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 8 and therefore denies them.

**Complaint No. 9:** Defendant is incorporated in California and has regular and established places of business in this judicial district.

**Answer to Complaint No. 9:** Apple admits that it is a California corporation and that its principal place of business is at 1 Apple Park Way, Cupertino, California 95014.  Apple admits that it has facilities in Texas.  Apple admits that it can be served with process through its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  Apple admits that it has a filing number that was provided by the Texas Secretary of State. To the extent Paragraph 9 calls for a legal conclusion, no response is required.  Apple denies any remaining allegations and contentions contained in Paragraph 9.

**FACTS**

**A.  Response to the '573 Patent**

**Complaint No. 10:** United States Patent 11,025,573 (the "'573 Patent"), entitled "Method and Apparatus for Data Sharing," was duly and legally issued on June 1, 2021, and named Ronald Czajka and Sam Attisha as the inventors (the "Inventors"). Attached as Exhibit 1 is a true and accurate copy of the '573 Patent.

**Answer to Complaint No. 10:** Apple admits that Exhibit 1 purports to be a copy of U.S. Patent No. 11,025,573 (the "'573 Patent").  Exhibit 1 on its face appears to state that it issued on June 1, 2011.  Exhibit 1 on its face appears to be titled "Method and Apparatus for Data Sharing." Apple is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations and characterizations in Paragraph 10 and therefore denies them. To the extent that Paragraph 10 asserts legal conclusions, no response is required.

**Complaint No. 11:** Ginko is the assignee of the entire right, title, and interest in the '573 Patent.

**Answer to Complaint No. 11:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 11 and therefore denies them.

**Complaint No. 12:** The '573 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. Defendant had knowledge of the '573 Patent at least as of the date of the initial Complaint in this lawsuit—October 24, 2024.

**Answer to Complaint No. 12:** To the extent Paragraph 12 asserts legal conclusions, no response is required. Apple admits the '573 Patent was identified to Apple at the time of service of the initial complaint in this lawsuit. To the extent that a response is required, Apple denies the allegations and characterizations contained in Paragraph 12.

**Complaint No. 13:** Upon information and belief, Apple tracks developments in relevant technology areas through industry conferences, internal IP reviews, and patent database searches. Apple has engaged in extensive patent litigation and licensing in wireless communication. Given its history of patent disputes and active participation in patent-related activities, it is reasonable to infer that Apple may have become aware of the '573 Patent during the period in which NameDrop® was developed and released. The extent of Apple's internal patent review processes is unknown without discovery.

**Answer to Complaint No. 13:** To the extent Paragraph 13 asserts legal conclusions, no response is required. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt.

56.    To the extent that a further response is required, Apple denies the allegations and characterizations contained in Paragraph 13.

**Complaint No. 14:** Furthermore, as a major technology company with a substantial patent portfolio in wireless communication, Apple routinely performs patent clearance searches before introducing new features in competitive markets. Apple has previously pursued patent enforcement actions against other technology companies, demonstrating its recognition of the importance of patent rights in its field. Given its established due diligence practices, Apple likely conducted a pre-launch patent search before introducing NameDrop®. Had Apple followed standard industry procedures and reviewed patents in relevant classifications, it would have been expected to identify the '573 Patent prior to this lawsuit being filed.

**Answer to Complaint No. 14:**   To the extent Paragraph 14 asserts legal conclusions, no response is required.  The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.    To the extent that a further response is required, Apple denies the allegations and characterizations contained in Paragraph 14.

**Complaint No. 15:** Apple's failure to acknowledge the '573 Patent—despite its well-documented patent monitoring and enforcement practices—raises a strong inference of willful blindness. Courts have recognized that willful blindness can be established when a company deliberately avoids confirming the existence of a patent while continuing to develop and commercialize similar technology. See *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011) (holding that a defendant cannot escape liability by deliberately avoiding knowledge of a patent); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1158 (N.D. Cal. 2007) (denying motion to dismiss willful infringement claims where the defendant, a sophisticated market participant, was likely aware of relevant patents).

**Answer to Complaint No. 15:**  To the extent Paragraph 15 asserts legal conclusions, no response is required.  The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.  To the extent that a further response is required, Apple denies the allegations and characterizations contained in Paragraph 15.

**Complaint No. 16:** The extent of Apple's pre-launch patent clearance efforts remains unknown and warrants discovery to determine whether Apple failed to conduct a reasonable patent search, deliberately structured its search to avoid identifying Ginko's technology, or intentionally ignored known patents in its field before launching NameDrop®.

**Answer to Complaint No. 16:**  To the extent Paragraph 16 asserts legal conclusions, no response is required.  The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.  To the extent that a further response is required, Apple denies the allegations and characterizations contained in Paragraph 16.

**Complaint No. 17:** Since 2018, Ginko has publicly promoted its patented technology and described its innovative contact exchange app built around the '573 Patent in press releases and other media.

**Answer to Complaint No. 17:**  Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 17 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.

**Complaint No. 18:** Ginko launched and described its patented technology at key tech industry events that Defendant and its agents regularly monitor and attend.

**Answer to Complaint No. 18:**  Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 18 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.  To

the extent that a further response is required, Apple denies the allegations and characterizations contained in Paragraph 16.

**Complaint No. 19:** In 2019, Ginko promoted its patented technology at high-profile industry events, including TechCrunch's 2nd Annual Winter Party, SXSW 2019, and TechCrunch Disrupt San Francisco 2019.

**Answer to Complaint No. 19:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 19 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.

**Complaint No. 20:** Ginko's patented technology received extensive attention at these events and generated coverage as a breakthrough technology.

**Answer to Complaint No. 20:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 20 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.

**Complaint No. 21:** Yahoo News and its chief tech correspondent, JP Mangalindan, covered Ginko's patented technology in its reporting of SXSW 2019.

**Answer to Complaint No. 21:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 21 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.

**Complaint No. 22:** Additional national media, such as NewsWatch TV, featured stories about Ginko's patented technology as a groundbreaking contact exchange app.

**Answer to Complaint No. 22:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 22 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.

**Complaint No. 23:** Ginko has continually engaged with the public to promote its patented technology.

**Answer to Complaint No. 23:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 23 and therefore denies them. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56.

**Complaint No. 24:** Given Ginko's public activities with respect to the '573 Patent, it is reasonable to infer that Apple should have become aware of the '573 Patent prior to this lawsuit being filed.

**Answer to Complaint No. 24:** To the extent Paragraph 24 asserts legal conclusions, no response is required. The Court has dismissed Ginko's pre-suit indirect infringement claims. Dkt. 56. To the extent that a further response is required, Apple denies the allegations and characterizations contained in Paragraph 24.

### B. Response to Defendant's Infringing Activities and Products

**Complaint No. 25:** Defendant has and continues to infringe the '573 Patent by making, using, selling, and/or offering for sale the Infringing Devices in the United States, including this judicial district, and importing into the United States the Infringing Devices that are sold in this judicial district.

**Answer to Complaint No. 25:** To the extent Paragraph 25 calls for a legal conclusion, no response is required. To the extent a response is required, Apple denies that Apple committed acts within this District giving rise to this action that has established minimum contacts with this forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple further denies that it infringes or has infringed any claim of any of

the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 25.

**Complaint No. 26:** The products that are the subject of this Complaint (the "Infringing Devices") include the Apple iPhone 16 Pro, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 14 Pro, iPhone 14 Plus, iPhone 14, iPhone SE (2nd & 3rd Generation), iPhone 13 Pro Max, iPhone 13 Pro, iPhone 13 Mini, iPhone 13, iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12 Mini, iPhone 12, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR, and Apple Watch Series 7, Apple Watch Series 8, Apple Series 9, Apple Watch Series 10, Apple Watch SE (2nd Generation), Apple Watch Ultra, and Apple Watch Ultra 2.

**Answer to Complaint No. 26:** To the extent Paragraph 26 calls for a legal conclusion, no response is required. Apple admits that it has marketed products under the following names in the United States: Apple iPhone 16 Pro, iPhone 16, iPhone 15 Pro Max, iPhone 15 Pro, iPhone 15 Plus, iPhone 15, iPhone 14 Pro Max, iPhone 14 Pro, iPhone 14 Plus, iPhone 14, iPhone SE (2nd & 3rd Generation), iPhone 13 Pro Max, iPhone 13 Pro, iPhone 13 Mini, iPhone 13, iPhone 12 Pro Max, iPhone 12 Pro, iPhone 12 Mini, iPhone 12, iPhone 11 Pro Max, iPhone 11 Pro, iPhone 11, iPhone XS Max, iPhone XS, iPhone XR, Apple Watch Series 7, Apple Watch Series 8, Apple Watch Series 9, Apple Watch Series 10, Apple Watch SE (2nd Generation), Apple Watch Ultra, and Apple Watch Ultra 2. Apple denies any purported allegations of infringement of the "'573 Patent," and denies any and all remaining allegations and characterizations contained in Paragraph 26.

**Complaint No. 27:** The "NameDrop®" feature was made available to the Infringing iPhones through the iOS 17 update, which was released on September 18, 2023.[6]

**Answer to Complaint No. 27:** To the extent Paragraph 27 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it has marketed iPhone products in the United States, including at least some of the models or products referred to in Paragraph 27. Apple further admits that it has made available a feature called "NameDrop." To the extent a response is required, Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 27.

**Complaint No. 28:** The "NameDrop®" feature was made available to the Infringing Watches through the watchOS10.1 update, which was released on October 25, 2023.[7]

**Answer to Complaint No. 28:** To the extent Paragraph 28 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that markets Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 28. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 28.

---

[6] *iOS 17 is available today*, APPLE NEWSROOM (Sep. 18, 2023), https://www.apple.com/newsroom/2023/09/ios-17-is-available-today/.

[7] *watchOS 10 is available today*, APPLE NEWSROOM (Sep. 18, 2023), https://www.apple.com/newsroom/2023/09/watchos-10-is-available-today. See also Hall, *watchOS 10.1 for Apple Watch now available with double tap gesture and NameDrop*, 9TO5MAC (Oct. 25, 2023, 10:03 AM), https://9to5mac.com/2023/10/25/watchos-10-1-release.

**Complaint No. 29:** The "NameDrop®" feature "allows users to easily share contact information by simply bringing their iPhone devices together or by bringing an iPhone and Apple Watch together."[8] NameDrop's core functionality depends on detecting device location to initiate the data exchange.

**Answer to Complaint No. 29:** To the extent Paragraph 29 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it markets iPhones and Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 29. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 29.

**Complaint No. 30:** The Infringing Devices have a processor and a memory, which together implement the NameDrop® feature. These devices identify, receive, send, and process user data for sharing between Apple devices in a network.

**Answer to Complaint No. 30:** To the extent Paragraph 30 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it markets iPhones and Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 30. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 30.

---

[8] *Secure AirDrop and NameDrop*, APPLE SUPPORT (Jan. 10, 2024) https://support.apple.com/guide/personal-safety/secure-airdrop-and-namedrop-ips7d84d2cdc/web.

**Complaint No. 31:** The memory of the Infringing Devices includes computer-executable instructions that, when executed by the processor, perform the steps of identifying a potential contact, receiving a request to share user data, sending communications to initiate data exchange, and completing the exchange once both parties confirm.

**Answer to Complaint No. 31:** To the extent Paragraph 31 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it markets iPhones and Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 31. Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 31.

**Complaint No. 32:** NameDrop® activates when a primary user holds their iPhone or Apple Watch a few centimeters from another user's iPhone or Apple Watch. As Apple instructs, "[a] glow will emerge from both devices, and Apple Watch vibrates to indicate a connection is being made." The users keep the devices near each other until NameDrop® appears on both screens, at which point both users are prompted to share contact information.[9]

**Answer to Complaint No. 32:** To the extent Paragraph 32 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it markets iPhones and Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 32. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 32.

---

[9] *iPhone User Guide, Use NameDrop on iPhone to share your contact info*, APPLE SUPPORT https://support.apple.com/guide/iphone/namedrop-iphone-share-contact-info-iph1b6c664b7/ios (last visited on Jul. 17, 2024).

**Complaint No. 33:** Through NameDrop®, Apple's Infringing Devices identify the other user as a potential contact and send that user a request to become a contact. Depending on permission settings, the primary user's device transmits communications to initiate the data exchange. If the potential contact accepts the communication, both users become contacts and share corresponding user data.

**Answer to Complaint No. 33:** To the extent Paragraph 33 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it markets iPhones and Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 33. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 33.

**Complaint No. 34:** Apple's NameDrop® feature enforces a strict threshold-based proximity requirement before permitting any data transfer. Apple's own materials confirm NameDrop® does not function unless two devices are within a few centimeters of each other, thereby receiving, from the potential contact, a first location.

**Answer to Complaint No. 34:** To the extent Paragraph 34 calls for a legal conclusion, no response is required. To the extent that a response is required, Apple admits that it markets iPhones and Apple Watch products in the United States, including at least some of the models or products referred to in Paragraph 34. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 34.

**Complaint No. 35:** The '573 Patent treats short-range signals (Bluetooth, UWB, Wi-Fi) as valid methods for location determination. NameDrop® operates via AirDrop[10] and uses Bluetooth Low Energy (BLE) and peer-to-peer Wi-Fi technology—and may include Ultra-Wideband (UWB)—to discover and communicate with nearby devices.[11]

**Answer to Complaint No. 35:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 35 related to the '573 Patent and therefore denies them. To the extent Paragraph 35 calls for a legal conclusion, no response is required. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 35.

**Complaint No. 36:** The '573 Patent states "the user device may include a location detection function that uses peer-to-peer signals with a user device of another user located within a proximity . . .". '573 Patent, 6:21-24. NameDrop® receives location data sufficient to determine when a second device's location is within a threshold distance.

**Answer to Complaint No. 36:** Apple admits that Paragraph 36 purports to quote from the '573 Patent specification to which no response is required. To the extent Paragraph 36 calls for a legal conclusion, no response is required. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that it infringes or has infringed

---

[10] *Apple Personal Safety User Guide*, *Secure NameDrop*, APPLE SUPPORT https://support.apple.com/guide/personal-safety/secure-namedrop-ips97e16d3b1/1.0/web/1.0 (last visited on Feb. 3, 2025).
[11] *AirDrop Security*, APPLE PLATFORM SECURITY (Feb. 18, 2021), https://support.apple.com/guide/security/airdrop-security-sec2261183f4/web

17

any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 36.

**Complaint No. 37:** The '573 Patent states that 'location' can be computed by "calculating the distance between the user device and other user devices." '573 Patent, 8:38-40. NameDrop® calculates the distance between the user device and other user devices to determine whether the two devices are within NameDrop's proximity threshold.

**Answer to Complaint No. 37:** Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations related to the '573 Patent in Paragraph 37 and therefore denies them. To the extent Paragraph 37 calls for a legal conclusion, no response is required. To the extent a response is required, Apple admits that it has made available a feature called "NameDrop." Apple denies that the asserted claims are directed to calculating a distance between the user device and other devices. Apple further denies that it infringes or has infringed any claim of any of the '573 Patent. Apple denies any remaining allegations and contentions contained in Paragraph 37.

**Complaint No. 38:** Claim 12, which depends from Claim 11, claims "[t]he system of claim 11, wherein the first location is an address, and wherein the second location is a geolocation that is proximate the first location."

**Answer to Complaint No. 38:** To the extent Paragraph 38 calls for a legal conclusion, no response is required. Apple admits that Claim 12 purports to depend from Claim 11 in the '573 Patent. Apple admits that the partial text of Claim 12 of the '573 Patent is set forth in Paragraph 38. Apple denies any remaining allegations and contentions contained in Paragraph 38.

**Complaint No. 39:** The '573 Patent states "the location component may include, for example, a global positioning system module or geolocation module…" '573 Patent, 4:15-16. The

'573 Patent also states "the second location matches the first location in a case that the first location and the second location are within a threshold distance…The threshold distance can be characterized by being a relatively small distance." '573 Patent 15:54-59. Location in the '573 Patent is not limited to a fixed set of coordinates; it includes proximity-based signals like Bluetooth or UWB to detect whether devices are within the threshold distance.

**Answer to Complaint No. 39:** To the extent Paragraph 39 calls for a legal conclusion, no response is required. Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 39 and therefore denies them.

**Complaint No. 40:** Apple's attempt to narrow "location" to only absolute coordinates contradicts the intrinsic evidence, including the file history, and contravenes established case law.

**Answer to Complaint No. 40:** To the extent Paragraph 40 calls for a legal conclusion, no response is required. Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 40 and therefore denies them.

**Complaint No. 41:** The '573 Patent states "the location of the user device matches the location of the marker if the location of the user device and the location of the marker are within a predefined distance." '573 Patent, 16:21-24.

**Answer to Complaint No. 41:** To the extent Paragraph 41 calls for a legal conclusion, no response is required. Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and characterizations in Paragraph 41 and therefore denies them

**Complaint No. 42:** Defendant has been infringing and is inducing infringement of the '573 Patent by actively and knowingly inducing purchasers and owners of Infringing Devices to make, use, sell, offer for sale, or import the Infringing Devices that infringe the '573 Patent.

**Answer to Complaint No. 42:** Denied.

19

**Complaint No. 43:** Apple actively encourages users to infringe the '573 Patent through official user guides[12], support pages, advertisements, and promotional materials that demonstrate how to use NameDrop in a manner that directly maps to the patented claims. Apple's public documentation and marketing campaigns provide clear evidence of Apple's intent to induce infringement under 35 U.S.C. § 271(b) and (c).

**Answer to Complaint No. 43:** Denied.

**Complaint No. 44:** Apple's promotional videos, YouTube tutorials[13], and marketing campaigns amplify this inducement. Apple's advertisements on its website, YouTube, and media platforms prominently feature the infringing use of NameDrop. These materials encourage users to use the feature in a way that directly infringes the '573 Patent, reinforcing Apple's intent to induce infringement.

**Answer to Complaint No. 44:** Denied.

**Complaint No. 45:** Apple's WWDC 2023 keynote presentation further demonstrates its active inducement of infringement by publicly showcasing NameDrop's infringing features. During the keynote, Apple's executives demonstrated how NameDrop works, emphasizing how contact information is shared.[14]

**Answer to Complaint No. 45:** Apple's WWDC 2023 keynote presentation speaks for itself. Apple denies the allegations and characterizations contained in Paragraph 45.

---

[12] *iPhone User Guide, Use NameDrop on iPhone to share your contact info*, APPLE SUPPORT https://support.apple.com/guide/iphone/namedrop-iphone-share-contact-info-iph1b6c664b7/ios (last visited on Jul. 17, 2024).

[13] *How to use NameDrop on iPhone*, https://www.youtube.com/watch?v=aZL5D1k-4aI (last visited Jan. 27, 2025).

[14] WWDC 2023 (25:32 mark) — June 5 | Apple https://youtu.be/GYkq9Rgoj8E

**Complaint No. 46:** Apple explicitly instructs and expects users to practice the steps of the patented methods. Because these official Apple-provided instructions are the only way to use NameDrop, users directly infringe the '573 Patent when following Apple's guidance.

**Answer to Complaint No. 46:** Denied.

**Complaint No. 47:** Courts have consistently found that marketing materials, user guides, and promotional materials can establish inducement at the pleading stage. See *DSU Med. Corp.* v. *JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (holding that "[e]vidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe"); see also *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) ("Encouraging or instructing others to use a product in an infringing manner is evidence of active inducement.").

**Answer to Complaint No. 47:** To the extent Paragraph 47 asserts legal conclusions, no response is required. To the extent that a response is required, Apple denies the allegations and characterizations contained in Paragraph 47.

**Complaint No. 48:** Defendant continues to market, promote, and train consumers on NameDrop's infringing functionalities, despite having knowledge of the '573 Patent at least since the filing of the initial Complaint in this lawsuit. Defendant's persistent and widespread promotion of NameDrop, coupled with its official user guides, constitutes willful and knowing infringement under of 35 U.S.C. § 271(b) and (c).

**Answer to Complaint No. 48:** Denied.

**Complaint No. 49:** Apple further contributorily infringes the '573 Patent under 35 U.S.C. § 271(c) by offering and distributing the Infringing Devices with the NameDrop feature, which is

21

especially designed or adapted to practice the claimed methods and lacks any substantial non-infringing use. NameDrop's sole or primary purpose is to facilitate the exchange of contact information—as claimed in the '573 Patent when two devices are in certain locations. Apple's promotional materials, user guides, and the technical structure of NameDrop confirm that it operates exclusively to enable contact-sharing when devices are in close proximity via Bluetooth Low Energy (BLE) and peer-to-peer Wi-Fi. Apple does not market or identify any independent, non-infringing application for NameDrop, nor does the feature provide any meaningful functionality outside the infringing contact-exchange process. Accordingly, NameDrop constitutes a component "especially made or especially adapted for use" in infringement of the '573 Patent without substantial non-infringing uses, rendering Apple liable for contributory infringement.

**Answer to Complaint No. 49:**  Denied.

**Complaint No. 50:** The Infringing Devices infringe at least claims 10, 11, and 14 of the '573 Patent.

**Answer to Complaint No. 50:**  Denied.

**Complaint No. 51:** Upon information and belief, future iterations of the Infringing Devices will infringe the '573 Patent.

**Answer to Complaint No. 51:**  To the extent Paragraph 51 asserts legal conclusions, no response is required.  To the extent that a response is required, Apple denies the allegations and characterizations contained in Paragraph 51.

**COUNT I**
**[ALLEGED] INFRINGEMENT OF THE '573 PATENT**

**Complaint No. 52:** Ginko repeats and realleges each of the preceding paragraphs as though fully set forth herein.

22

**Answer to Complaint No. 52:** Paragraphs 1-51 of Apple's Answer are incorporated by reference as if set forth in full herein, and Apple repeats and incorporates its responses to Paragraphs 1-51.

**Complaint No. 53:** Defendant has been and is infringing the '573 Patent, including at least claims 10, 11, and 14, by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Infringing Devices in violation of 35 U.S.C. § 271(a) through (c).

**Answer to Complaint No. 53:** Denied.

**Complaint No. 54:** Defendant's acts of infringement of the '573 Patent have caused and will continue to cause Ginko damages for which Ginko is entitled to compensation pursuant to 35 U.S.C. § 284.

**Answer to Complaint No. 54:** Denied.

**Complaint No. 55:** Defendant's acts of infringement of the '573 Patent have caused and will continue to cause immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Ginko has no adequate remedy at law.

**Answer to Complaint No. 55:** Denied.

**PRAYER FOR RELIEF**

The section of the Complaint titled "Prayer for Relief" sets forth the statement of relief by Ginko to which no response is required. Apple denies that Ginko is entitled to any relief sought in its Prayer for Relief or otherwise.

**GENERAL DENIAL**

To the extent any allegations in Plaintiff's Complaint are not specifically admitted, Apple denies them.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Apple, without waiver, limitation, or prejudice, hereby asserts the affirmative defenses below.  That Apple asserts these affirmative defenses is not an admission that Apple bears the burden of proof on any of these defenses. In addition to the defenses described below, subject to its responses above, Apple reserves the right to modify, amend, and/or expand upon these defenses as discovery proceeds, and to allege additional defenses that become known through the course of discovery.

### FIRST AFFIRMATIVE DEFENSE
(Non-Infringement)

1.      Plaintiff's claims are barred in whole or in part because Apple has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '573 Patent, either literally or under the Doctrine of Equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### SECOND AFFIRMATIVE DEFENSE
(Invalidity)

2.      Plaintiff's claims are barred in whole or in part because each asserted claim of the '573 Patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, 112, and/or any other applicable statutory provisions of Title 35 of the United States Code.

### THIRD AFFIRMATIVE DEFENSE
(Prosecution History Estoppel)

3.      Plaintiff's claims are barred in whole or in part by reason of estoppel.

4.      Plaintiff is estopped from construing any valid claim of the '573 Patent to be infringed or to have been infringed, either literally or by application of the Doctrine of Equivalents, by any product made, used, imported, sold, or offered for sale by Apple in view of prior art and/or

24

because of admissions, representations, and/or statements made to the Patent Office during prosecution of any application leading to the issuance of the '573 Patent or any related patent, because of disclosures or language in the specification of the '573 Patent, and/or because of limitations in the claims of the '573 Patents.

### FOURTH AFFIRMATIVE DEFENSE
**(Limitation on Damages; Failure to Mark)**

5. To the extent that Plaintiff and/or any predecessors in interest or any licensees to the '573 Patent failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that Apple's actions allegedly infringe the '573 Patent, Apple is not liable to Plaintiff for the acts alleged to have been performed before Apple received actual notice that the Accused Products were allegedly infringing the '573 Patent.

6. Plaintiff's claims for relief are further barred, in whole or in part, under 35 U.S.C. §§ 286 and 288.

### FIFTH AFFIRMATIVE DEFENSE
**(Not Exceptional)**

7. Plaintiff's case against Apple is not exceptional under 35 U.S.C. § 285, but Plaintiff's filing and prosecuting of the present lawsuit which imposes upon Apple the requirement to mount a defense of this lawsuit is exceptional under 35 U.S.C. § 285.

### SIXTH AFFIRMATIVE DEFENSE
**(No Willfulness)**

8. Apple has not and does not willfully infringe any claim of the '573 Patent.

### SEVENTH AFFIRMATIVE DEFENSE
**(Failure to State a Claims)**

9. Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**RESERVATION OF ALL AFFIRMATIVE DEFENSES**

Apple hereby gives notice that it intends to rely upon any other matter constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, and that it reserves the right to seek leave to amend this Answer to add to, amend, withdraw, or modify these defenses as its investigation continues and as discovery may require.

**DEFENDANT'S COUNTERCLAIM FOR DECLARATORY RELIEF**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Apple Inc. ("Apple") hereby asserts the following Counterclaim to Ginko, LLC's ("Ginko") First Amended Complaint as follows:

**Nature of the Action**

1.    This Counterclaim seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Apple does not infringe any valid and enforceable claim of 11,025,573 (the "'573 Patent").

**Parties**

2.    Apple is a corporation organized under the laws of the State of California.

3.    Based on paragraph 8 of the First Amended Complaint, Ginko is a Michigan corporation with its principal place of business at 3523 Oak Knoll Drive, Brighton, MI.

**Jurisdiction And Venue**

4. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1331 and 1338(a), the patent laws of the United States set forth at 35 U.S.C. §§ 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. Personal jurisdiction over Ginko is proper because, inter alia, Ginko has consented to the personal jurisdiction of this Court by commencing its action for patent infringement in this judicial district.

26

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

## COUNT ONE

### Declaration of Non-Infringement of the '573 Patent

7. Apple incorporates herein and re-alleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 – 6 of the Counterclaims above, inclusive.

8. By virtue of Ginko's filing of the Complaint herein, an actual controversy exists between Apple and Ginko with respect to Apple's alleged infringement of the '573 Patent.

9. Apple has not and does not infringe the '573 Patent, either directly or indirectly, literally, or under the doctrine of equivalents. For example and without limitation, as properly construed, the claims in the asserted patents are not practiced by Apple or the devices provided by Apple to its customers.

10. Apple is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, literally or under the doctrine of equivalents, any valid, enforceable claim of the '573 Patent.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Apple respectfully demands a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Apple prays for judgment as follows:

A.     Ginko takes nothing by way of its Complaint;

B.     A judgment in favor of Apple and against Ginko, thereby dismissing Ginko's Complaint in its entirety, with prejudice, and deny Ginko all requested relief;

27

C.      A declaration that Apple has not infringed, either directly or indirectly, any valid claims of the '573 Patent;

D.      An award to Apple of its attorneys' fees and expenses of litigation;

E.      An entry of judgment against Ginko for the amount of damages that Apple proves at trial; and

F.      Such other and further relief as this Court may deem just and proper.


Dated: October 10, 2025                              Respectfully submitted,


                                                     _/s / Steve Wingard_____
*Of Counsel:*                                        Steve Wingard
Garland Stephens                                     State Bar No. 24053910
Anna Dwyer (*pro hac vice*)                          swingard@scottdoug.com
John Brinkmann                                       Stephen L. Burbank
Jason Choy (*pro hac vice*)                          State Bar No. 24109672
BLUE PEAK LAW GROUP LLP                              sburbank@scottdoug.com
Telephone: 281-972-3036                              Robert P. Earle
garland@bluepeak.law                                 State Bar No. 241245566
anna@bluepeak.law                                    rearle@scottdoug.com
john@bluepeak.law                                    Scott Douglass & McConnico LLP
choy@bluepeak.law                                    303 Colorado Street, Suite 2400
                                                     Austin, TX 78701-3234
                                                     (512) 495-6300 – Telephone
                                                     (512) 495-6399 – Facsimile

                                                     *Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on October 10, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Steve Wingard*
Steve Wingard
