GARLAND T. STEPHENS (NY Bar No. 2567162)
garland@bluepeak.law
MELISSA L. HOTZE (*pro hac vice pending*)
hotze@bluepeak.law
JOHN P. BRINKMANN (*pro hac vice pending*)
john@bluepeak.law
BLUE PEAK LAW GROUP LLP
3139 W Holcombe Blvd., PMB 8160
Houston, TX 77025
Telephone: (281) 972-3036

JASON F. CHOY (Bar No. 277583)
choy@bluepeak.law
BLUE PEAK LAW GROUP LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306
Telephone: (213) 647-1228

ANNA E. DWYER (*pro hac vice pending*)
anna@bluepeak.law
BLUE PEAK LAW GROUP LLP
PO Box 20006
New York, NY 10025
Telephone: (772) 631-6460

*Attorneys for Defendant APPLE INC.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GINKO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:25-cv-11014-VC<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**JURY TRIAL DEMANDED**<br><br>Date: May 28, 2026<br>Time: 10:00 A.M.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 28, 2026, at 10:00 A.M., or as soon as the matter may be heard, Defendant Apple Inc. hereby moves the United States District Court for the Northern District of California, pursuant to Federal Rule of Civil Procedure 12(c), for an order dismissing Plaintiff Ginko LLC's Complaint.

The motion is made on the grounds that Plaintiff Ginko LLC's Complaint fails to state a claim of infringement because the Asserted Patent is unpatentable under 35 U.S.C. § 101.

This Motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, and all other papers in this proceeding, and such oral argument as may be heard by the Court.

## STATEMENT OF REQUESTED RELIEF

Apple seeks an order entering judgment, pursuant to Federal Rule of Civil Procedure 12(c), that the Asserted Claims of Plaintiff Ginko LLC's Asserted Patent are invalid for claiming unpatentable subject matter under 35 U.S.C. § 101.

# TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. THE TECHNOLOGY OF THE ASSERTED PATENT ....... 1

III. LEGAL STANDARD ....... 5

IV. THE ASSERTED PATENT IS DIRECTED TO INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101 ....... 6

A. The Asserted Claims Fail *Alice* Step One ....... 6

1. The Claims Are Directed To The Long-Standing Practice Of Exchanging Contact Information And Can Be Performed Manually By Humans ....... 6

2. Courts Have Found Analogous Claims Ineligible Under § 101 ....... 9

3. The Claims Do Not Cover A Specific Improvement To Computer Technology, But Instead Recite Generic Computing Components and "Instructions" Defined By Their Function ....... 12

B. The Asserted Claims Contain No Inventive Concept Under *Alice* Step Two ....... 14

C. This Case Should Be Dismissed With Prejudice ....... 15

V. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)........ 6, 11, 12, 13

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
No. 19-cv-05903-JST, 2020 WL 6129139 (N.D. Cal. Sep. 2, 2020), *aff'd*, 853 F. App'x 669 (Fed. Cir. 2021)........ 14

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........ passim

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
569 U.S. 576 (2013)........ 5

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)........ 6

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024)........ 14

*Bluebonnet Internet Media Servs., LLC v. Pandora Media*, LLC,
No. 21-cv-08294-VC, 2022 WL 4093168 (N.D. Cal. Sep. 7, 2022)........ 14

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
955 F.3d 971 (Fed. Cir. 2020)........ 14

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019)........ 5

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)........ 12

*Calif. Inst. of Tech. v. Hughes Commc'ns Inc.*,
59 F. Supp. 3d 974 (C.D. Cal. 2014)........ 9

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012)........ 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)........ 12

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020)........ 9

*Esignature Software, LLC v. Adobe Inc.*,
656 F. Supp. 3d 1041 (N.D. Cal. 2023)........ 1, 11

*In re Roslin Inst. (Edinburgh)*,
750 F.3d 1333 (Fed. Cir. 2014)........ 5

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)........ 14

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)........ 15

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)....8, 9, 12

*IPA Techs., Inc. v. Amazon.com, Inc.*,
307 F. Supp. 3d 356 (D. Del. 2018)....9

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
839 F. App'x 520 (Fed. Cir. 2021)....1, 9, 11

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310, 1315 (Fed. Cir. 2021)....5

*Return Mail, Inc. v. United States Postal Service*,
868 F.3d 1350, 1368 (Fed. Cir. 2017), *rev'd on other grounds*, 587 U.S. 618 (2019)....8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)....5

*Silver State Intellectual Techs. v. Facebook Inc.*,
314 F. Supp. 3d 1041 (N.D. Cal. 2018)....1, 9, 10

*Simio, LLC v. FlexSim Software Prod., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....15

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019)....6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)....9

*Trustybell, GmbH v. Bluenotary, LLC*,
No. 25-cv-8871, 2026 WL 699557 (N.D. Ill. Mar. 12, 2026)....11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....13

*Ultramercial, Inc. v. Hulu, LLC,*
*772 F.3d 709 (Fed. Cir. 2014)*....14

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020)....12

*Weisner v. Google LLC*,
51 F.4th 1073 (Fed. Cir. 2022)....1, 10, 11

*WhitServe LLC v. Donuts Inc.*,
809 F. App'x 929 (Fed. Cir. 2020)....15

**Statutes**

35 U.S.C. § 101....passim

**Other Authorities**

Fed. R. Civ. P. 12(c)....5, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The three asserted claims in this case—claims 10, 11, and 14 of Ginko's U.S. Patent No. 11,025,573—fail both steps of the Supreme Court's two-step *Alice* analysis for patent eligibility under 35 U.S.C. § 101.

The claims fail *Alice* step one because they are directed to a patent ineligible abstract idea. The focus of independent claim 10 is the abstract idea of sharing selected contact information between two individuals through an intermediary. Dependent claims 11 and 14 require that abstract idea be carried out when the two individuals are in the same location. These abstract ideas are carried out using generic computing components and undisclosed "executable instructions." Strip away the generic references to "systems," "processors," "memory," and "executable instructions that . . . perform operations," and what remains is no different from the long-standing practice of exchanging contact information through an intermediary, which has been performed commonly with business cards and more recently, electronically.

The claims fail *Alice* step two because they merely *implement* these abstract ideas in a basic network environment. The Asserted Patent does not claim any specialized components or software, does not solve any technical problem or provide any improvement to computer or network technology, nor does it depart in any way from the prior art. To the contrary, the Asserted Patent simply seeks to digitize a long-standing practice using computing components it admits were well-known. As discussed below, similar to this Court's opinion in *Silver State*, the claims here recite the basic concept of selectively sharing contact information between nearby users. And as in *Weisner*, *Esignature*, and *Mortgage App. Techs*., the Asserted Patent simply digitizes and automates a long-standing human practice using basic components.

Judgment of invalidity on the pleadings is appropriate because there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.

### II. THE TECHNOLOGY OF THE ASSERTED PATENT

The Asserted Patent—titled "Method and Apparatus for Data Sharing"—states that "[e]xchange of personal and professional contact information with another via business cards is on the decline, while digital contact information exchange is now trending." Dkt. 29-1 ("Asserted

Patent") at 1:22-24. According to the patent, there is thus "a need for exchanging digital contact information immediately or upon request, such as in an impromptu situation or event, and for controlling future access to the exchanged information." *Id.* at 1:26-29.

To address the purported trend in digital contact information exchange, the Asserted Patent discloses systems comprised of generic computing components and executable instructions that "identify[], for a user associated with a user device, a potential contact; receiv[e] from the user device of the user, a request for the user to become a contact with the potential contact; and send[], based on the request, a communication to the potential contact to initiate a data exchange." *Id.* at 1:34-39. The "executable code" is described only in terms "operations" that can readily be performed by humans. No actual computer code or any other form of executable instructions is disclosed.

Figure 1 provides an example of an "apparatus for detecting contact proximity and sharing contact information in accordance with implementations of the present disclosure." *Id.* at 3:49-52. The components of the system exemplified in Figure 1 include "a processing unit 110, a memory unit 120, a location component 130, a communication component 140, a user interface unit 150, or a combination thereof." *Id.* at 3:53-61.




*FIG. 1*

The specification admits these are "***well-known structures and devices***" and describes them generically based on their function. *Id.* at 3:16-19 (emphasis added). For instance, the "processor 110" may be "one or more various computer processors used to process data and perform computing tasks," such as a "central processing unit (CPU) 112, and/or a graphical processing unit (GPU) 114 . . . . may be implemented as a microcontroller, microprocessor, or an application specific integrated circuit (ASIC), or a combination thereof." *Id.* at 3:62-4:2. The memory used to store computer instructions to be executed by the processor 110, along with "user

account information or contact information, entered by the user via user interface unit 150 or received from the communication component 140" are also described generically. *Id.* at 4:3-14.

So is the stored and exchanged user data, which the specification describes in expansive, generic, and conventional terms: "information relative to an account profile of a user and may comprise name, title, company, availability status, account picture, phone and mobile numbers, mailing addresses, email addresses, facsimile numbers, social media links, websites, birthday, anniversary, and/or other information associated with the user." *Id.* at 5:32-37. The specification generically teaches that data "may be organized into one or more profiles (e.g., a work profile comprising the user's business contact information and a home profile comprising personal contact information), to permit the user to conveniently elect for only certain profiles to be publicly viewable, and/or to distinguish professional and personal user data for presentation to other users." *Id.* at 5:32-46.

Figure 2 provides a "diagram of an example of a system for data sharing between devices based on relative proximity," and Figure 3 provides "a flowchart diagram of an example of a method for data sharing between devices of FIG. 2[.]" *Id.* at 2:35-41, Figs. 2-3.




*FIG. 2*




*FIG. 3*

There is otherwise no description of how the claimed devices are configured or designed to execute the data sharing methods they are intended to perform.

Independent claim 10 describes a data sharing system comprising a processor, memory and instructions that identifies a potential contact for a user, then facilitates the exchange of contact information between them in response to users' requests to do so:

> 10. A system for data sharing between devices in a network, comprising:
> a processor; and
> a memory, the memory comprising computer-executable instructions that, when executed by the processor, perform operations comprising:
> identifying, for a user associated with a user device, a potential contact,
> the user being associated with user data, and
> the potential contact being associated with contact data;
> receiving, from the user device of the user, a request for the user to become a contact with the potential contact,
> the request comprising a first permission setting, and
> the first permission setting being at least a first value indicating that a subset of user data of a permitting user is to be shared with a permitted user;
> sending, based on the request, a communication to the potential contact to initiate a data exchange; and
> in response to receiving an acceptance of the communication:
> setting the user as a contact of the potential contact,
> the subset of the user data being viewable to the potential contact in a case that the first permission setting being the first value; and
> setting the potential contact as a contact of the user.

Claims 11 and 14 depend from claim 10 and further require that the potential contact is identified and requested by the system because the user and the potential contact are in the same location:

> 11. The system of claim 10, wherein identifying the potential contact comprises:
> receiving, from the potential contact, a first location; and
> identifying the potential contact in a case that a second location of the user device matches the first location.
>
> 14. The system of claim 10,
> wherein receiving, from the user device of the user, the request for the user to become a contact with the potential

contact, comprises:
receiving a first location that is associated with the request; and
wherein sending, based on the request, the communication to the potential contact to initiate the data exchange comprises: subsequent to receiving the request from the user, sending the communication to the potential contact on a condition that the first location matching a second location associated with the potential contact.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Judgment on the pleadings is proper when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law[.]"); *see also Secured Mail Sols. LLC v. Univ. Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 884 (Fed. Cir. 2019). However, "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols.*, 873 F.3d at 913 (internal quotations marks and citation omitted). Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts…require a holding of ineligibility under the substantive standards of law." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021) (citation omitted).

"Laws of nature, natural phenomena, and abstract ideas are not patentable" under 35 U.S.C. § 101. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The two-step "*Alice*" framework distinguishes "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 217. First, the Court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, the Court then assesses whether "the elements of each claim both individually and as an ordered combination…transform the nature of the claim into a patent-eligible application." *Id.*

(cleaned up). While in some circumstances there may be facts that underlie some of the subsidiary inquiries at *Alice* step two, the Federal Circuit has emphatically reiterated that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Instead, "[p]atent eligibility has in many cases been resolved on motions to dismiss or summary judgment" and "[n]othing in [*Berkheimer*] should be viewed as casting doubt on the propriety of those cases." *Id.*

## IV. THE ASSERTED PATENT IS DIRECTED TO INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101

### A. The Asserted Claims Fail *Alice* Step One

#### 1. The Claims Are Directed To The Long-Standing Practice Of Exchanging Contact Information And Can Be Performed Manually By Humans

At *Alice* step one, the court decides whether the patent's claims are directed to an abstract idea. This inquiry has two parts. First, the court must identify "what the patent asserts to be the 'focus of the claimed advance over the prior art[.]'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). Second, the Court must determine whether that "focus" is an abstract idea.

Here, the specification of the Asserted Patent makes clear that the focus of the alleged advance is the exchange of selected contact information between two individuals using networked devices. In some embodiments, and in the asserted dependent claims, the idea is further that the two individuals are in the same location. The single asserted independent claim, claim 10, recites a generic processor and memory comprising instructions for exchanging contact information with a user device and a potential contact on a network. The dependent claims add that the location of the user and the potential contact must "match."

The Asserted Patent itself identifies the need addressed by the alleged advance as simply digitizing a conventional exchange of contact information:

> Exchange of personal and professional contact information with another via business cards is on the decline, while digital contact information exchange is now trending. . . . There is a need for exchanging digital contact information immediately or upon request, such as in an impromptu situation or event, and for controlling future access to the exchanged information.

Asserted Patent at 1:22-29.

Importantly, each step of the asserted claims can be and has been performed manually by human beings. In the example below, Andy (the claimed system) is at a conference or networking event with his friends Ben (the claimed "user") and Charles (the claimed "potential contact"). Andy thinks Ben and Charles should connect, and asks Ben if Ben would like Andy to introduce him to Charles. Ben requests that Andy make the introduction, and gives Andy his business card, asking Andy only to provide Charles with Ben's business card and not his home phone number (a "subset of user data"). Andy asks Charles if he would also like an introduction to Ben. Charles agrees, and gives Andy his business card for Ben. Andy gives Charles and Ben the business cards, which contain their work contact information but not personal contact information. With respect to claims 11 and 14, the three people perform the same roles when Ben and Charles are in the same location. Note that the business cards in this example could be letters, calling cards, phone calls, faxes or emails, and the contact information could be a street address, phone or fax number, or email address. All long predate the Asserted Patent.

| **Asserted Patent Claim** | **Human Example** |
|---|---|
| Claim 10 | |
| 10. A system for data sharing between devices in a network, comprising: a processor; and a memory, the memory comprising computer-executable instructions that, when executed by the processor, perform operations comprising: | Andy (the system) is at a conference or networking event with Ben (the "user") and Charles (the "potential contact"). |
| identifying, for a user associated with a user device, a potential contact, the user being associated with user data, and the potential contact being associated with contact data; | Andy identifies Charles as someone with whom Ben should connect and asks Ben for his business card (Ben's "user data") so that he can give Ben's business card to Charles. |
| receiving, from the user device of the user, a request for the user to become a contact with the potential contact, the request comprising a first permission setting, and the first permission setting being at least a first value indicating that a subset of user data of a permitting user is to be shared with a permitted user; | Ben gives Andy his business card and asks Andy to share only Ben's business card with Charles and not to share Ben's home phone number with Charles ("permission… indicating that a subset of user data…is to be shared"). |

| | |
|---|---|
| sending, based on the request, a communication to the potential contact to initiate a data exchange; and | Andy asks Charles if Charles would like Ben's business card and if Charles would provide his business card to Ben. |
| in response to receiving an acceptance of the communication: setting the user as a contact of the potential contact, the subset of the user data being viewable to the potential contact in a case that the first permission setting being the first value; and | Charles says yes to Andy. Andy gives Ben's business card to Charles. |
| setting the potential contact as a contact of the user. | Andy accepts Charles's business card and gives Charles' business card to Ben. |
| **Claim 11** | |
| 11. The system of claim 10, wherein identifying the potential contact comprises: receiving, from the potential contact, a first location; and identifying the potential contact in a case that a second location of the user device matches the first location. | Charles tells Andy that he is at the conference. Andy knows Ben is also at the conference and decides that Ben and Charles should connect. |
| **Claim 14** | |
| 14. The system of claim 10, wherein receiving, from the user device of the user, the request for the user to become a contact with the potential contact, comprises: | |
| receiving a first location that is associated with the request; and | Ben tells Andy he is at the conference when he requests that Andy introduce Ben to Charles. |
| wherein sending, based on the request, the communication to the potential contact to initiate the data exchange comprises: subsequent to receiving the request from the user, sending the communication to the potential contact on a condition that the first location matching a second location associated with the potential contact. | Andy agrees to introduce Ben to Charles on condition that Charles is also attending the conference. |

This contact information exchange is conceptually no different from what the Asserted Patent claims. In the case of email messaging, it is even performed on the same kind of generic networked computer hardware. Generic computer implementation of an abstract idea does not make an abstract idea any less abstract. *Return Mail, Inc. v. United States Postal Service*, 868 F.3d 1350, 1368 (Fed. Cir. 2017), *rev'd on other grounds*, 587 U.S. 618 (2019); *Intell. Ventures I*, 838 F.3d at 1317.

The Federal Circuit has consistently held that a longstanding practice that "can be and has been performed by humans without the use of a computer . . . is an abstract idea." *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525-26 (Fed. Cir. 2021) (granting 12(c) motion under § 101 finding abstract the idea of "information exchange in an online loan application process which can easily be performed by a human"); *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (granting 12(c) motion under § 101 finding "[c]laims . . . directed to longstanding commercial practices do not pass step one of the two-part § 101 test.").

Here, the Asserted Patent takes an age-old practice performed manually by human beings – exchanging contact information – and applies it on a computer. *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogizing an email processing software program to a "brick-and-mortar" post office or corporate mailroom); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (claims for translating a functional description of a logic circuit into a hardware component description of the logic circuit were invalid because they "can be performed mentally or with pencil and paper"); *Calif. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 995 (C.D. Cal. 2014) (viewing pencil-and-paper test as "stand-in for another concern: that humans engaged in the same activity long before the invention of computers.").

### 2. Courts Have Found Analogous Claims Ineligible Under § 101

In applying *Alice* step one, courts generally compare claims at issue to claims from previous cases. *See IPA Techs., Inc. v. Amazon.com, Inc.*, 307 F. Supp. 3d 356, 363 (D. Del. 2018). The Federal Circuit and courts in this district have repeatedly found analogous claims ineligible at step one. In *Silver State Intellectual Techs. v. Facebook Inc.*, the court granted judgment on the pleadings because the claims were directed to the abstract idea of "storing and selectively sharing location-based information," which were "undisputedly well-known functions that humans have traditionally performed for decades[.]" 314 F. Supp. 3d 1041, 1046-47 (N.D. Cal. 2018). There, the claims were directed to methods of providing a user's contact information based on their location:

> 1. A ***method of providing contact information regarding a user***, the method comprising:
> allocating a user-specific space in memory accessible over a computer network to a specific user;
> associating a mobile communication device with the user;
> ***determining a geographic location of the user*** by receiving location information provided by a mobile communication device;
> storing data indicative of the location of the user in a user-specific space;
> ***receiving from the user, additional data regarding the user***, the additional data being related to the geographic location of the user;
> storing the additional data regarding the user in the user-specific space;
> ***receiving from the user an access list of possible requesters of the data and the additional data***;
> storing the access list of possible requesters of the data and the additional data in the user-specific space; and
> ***providing the data indicative of the location of the user and the additional data regarding the user to possible requesters on the access list.***

*Id*. (emphasis added). The claims of the Asserted Patent here are conceptually no different from *Silver State*: they functionally recite the basic concept of selectively sharing contact information between nearby users of personal communication devices. The location-based information sharing claims in *Silver State* are directed to an abstract idea; the Asserted Patent's claims are as well.

In *Weisner v. Google LLC*, the specifications of the challenged patents, like the Asserted Patent here, described ways "in which individuals and businesses can sign up for a system so that they can exchange information, for instance 'a URL or an electronic business card.'" 51 F.4th 1073, 1075 (Fed. Cir. 2022). According to the specification, individuals who encountered people or businesses could record them in their "leg history" – described in the specification as "the accumulation of a digital record of a person's physical presence across time" – either by accepting a proposal from another person or business, or by unilaterally making an entry. *Id*. The court held that the claims, which reflected the methods described in the specification, were directed to the abstract idea of "collect[ing] information on a user's movements and location history [and] electronically record[ing] that data," and that this is no different than creating a digital travel log. *Id*. at 1081-82 (citation omitted). In holding that the claims were abstract, the Court noted that "[a]utomation or digitization of a conventional method of organizing human activity like the creation of a travel log on a computer does not bring the claims out of the realm of abstractness."

*Id*. at 1083. The Court observed that "the fact that the claims recite a number of generic elements – including a processing system, an application, and a handheld mobile communication device – does not shift their focus away from the core idea of creating a digital travel log." *Id*.

In *Esignature Software, LLC v. Adobe Inc.*, the claims covered methods for embedding electronic signatures into an electronic document by (1) creating a secure and un-editable electronic document, (2) deciding who will sign that document, (3) determining where in the document each signer should sign, and (4) enabling the signer to "mimic the real world experience of signing paper documents." 656 F. Supp. 3d 1041, 1047 (N.D. Cal. 2023). The court held that the claims recited the existing business practice of applying signatures to specific points in a secure electronic document, with the benefit of generic computing technology. *Id*. at 1048. In holding the claims unpatentable, the court observed that, "claims that do something *to* a computer may be concrete, but claims that do something abstract *on* a computer are not." *Id*. at 1049 (citing *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016)).

In *Mortgage App. Techs., LLC v. MeridianLink, Inc.*, the challenged claims recited methods for processing loan applications by extracting data from a loan application and comparing it to lender underwriting criteria to determine compatible lenders. 839 F. App'x 520, 522-23 (Fed. Cir. 2021). The Federal Circuit cited a panoply of cases holding that "information storage and exchange is an abstract idea even when it uses computers as a tool," and observed that "mere automation of the exchange and storage of information does not render the claims any less abstract." *Id*. at 526 (collecting cases).

The Asserted Patent is similar to the challenged patents in each of these cases. Like the challenged patents in *Silver State*, the claims here are directed to the long-standing practice of exchanging contact information based on location. Just as in *Weisner*, the Asserted Patent digitizes a conventional method of organizing human activity using computing devices comprised of generic components. As in *Esignature*, the Asserted Patent simply recites an existing practice performed *on* a computer. And just as in M*ortgage App. Techs.*, the Asserted Patent here merely automates the exchange and storage of information. *See also Trustybell, GmbH v. Bluenotary, LLC*, No. 25-cv-8871, 2026 WL 699557, at *4 (N.D. Ill. Mar. 12, 2026) (methods of automating

the process of verifying the identity of participants by comparing images to participant ID abstract at step one). As the courts found in these cases, the Asserted Patent is abstract at step one.

### 3. The Claims Do Not Cover A Specific Improvement To Computer Technology, But Instead Recite Generic Computing Components and "Instructions" Defined By Their Function

It is well-settled law that carrying out an abstract idea using conventional computer technology is ineligible for patent protection under § 101. *Alice*, 573 U.S. at 223 (in light of "the ubiquity of computers," limiting a claim covering an abstract concept to a "wholly generic computer implementation" is insufficient to transform the idea into a patent-eligible invention); *Intell. Ventures I*, 838 F.3d at 1314; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Affinity Labs*, 838 F.3d at 1259 (collecting cases); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'") (citations omitted).

Judgment on the pleadings is particularly appropriate here because the claims are directed to generic "instructions that . . . perform operations" long known to humans, this time executed by systems that the Asserted Patent admits are comprised entirely of "***well-known structures and devices***[.]" Asserted Patent at 3:16-19 (emphasis added). In other words, the Asserted Patent does not claim any improvement to computer technology or a technical solution to any technical problem, but rather, an abstract idea implemented with conventional computer technology. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (In cases involving software innovations, the abstract inquiry often turns on "whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool.").

Critically, any purported technical solution to any technical problem is wholly absent from these purely functional claims. The claims also do not recite *how* contact information is exchanged (no specific communication method, no new transfer mechanism), or *how* permission settings are implemented, much less *how* proximity is detected (no specific sensor, no particular protocol, no

novel algorithm). *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("claim [language] requires the functional results of converting, routing, controlling, monitoring, and accumulating records, but does not sufficiently describe how to achieve these results in a non-abstract way.") (internal quotations omitted); *Affinity Labs of Texas*, 838 F.3d at 1271 (claim was "written in largely functional terms . . . . rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent."). Instead, the claims recite only the *concept* of exchanging contact information over a network using permission settings to control what is shared and, in the dependent claims, that the exchange is dependent upon the location of the user and potential contact. The claims merely recite systems and components that perform the claimed contact information exchange and the specification provides absolutely no detail on the computer-executable instructions that are necessary to enable the system to perform the claimed methods.

For example, as shown *supra* § II, the specification teaches that processor(s) and memory as generic conventional components, and with location determined using GPS—but the Asserted Patent does not purport to improve the function of any of the claimed components. Asserted Patent at 3:62-4:29. Figures 1 and 3, which show an example apparatus and flowchart diagram of the claimed methods, depict generic components and a very high-level functional description of the claimed method. The specification states in a single sentence that the interface of the system "may include, for example, part of a software application installed on and executed by the processor 110 and configured to receive and store user data, contact data and other information stored in the memory 120." *Id.* at 4:49-53. But there is no other discussion of this software or any specific instructions included in it. The Asserted Patent does not purport to improve the function of any software algorithm or solve a technical problem when sharing contacts on a computer.

There is no description in the specification or claims that shows how to configure the system to perform the claimed methods. Instead, the system and its components are described—both in the specification and the claims—exclusively by the functions they perform. "[C]laims . . . drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results . . . . are almost always found to be

ineligible for patenting under Section 101." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024). *See also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (specification "fail[ed] to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms."); *Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 19-cv-05903-JST, 2020 WL 6129139, at *7 (N.D. Cal. Sep. 2, 2020), *aff'd*, 853 F. App'x 669 (Fed. Cir. 2021); *Cf. Bluebonnet Internet Media Servs., LLC v. Pandora Media*, LLC, No. 21-cv-08294-VC, 2022 WL 4093168, at *1 (N.D. Cal. Sep. 7, 2022). The reasoning in each of these cases makes sense; if the claims describe generic components in purely functional terms, they are "abstract" because they broadly claim results themselves, rather than a concrete invention that achieves those results. That is true here as well.

### B. The Asserted Claims Contain No Inventive Concept Under *Alice* Step Two

To pass step two, the claims must "do significantly more than simply describe [the] abstract method." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citation omitted). Yet, for the reasons set forth above, the claims do nothing more than claim applying the abstract idea on a computer. *See Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 980 (Fed. Cir. 2020) (claims lacked inventive concept where "[n]othing in the claims, understood in light of the specification, appears to require anything more than off-the-shelf, conventional computer, storage, network, and display technology for collecting the data related to financial transactions, and displaying the data to the users.").

The specification does not teach a novel or even specific way to configure the claimed processor, memory, user data, or location data to carry out the data exchange methods. Nor does the specification explain how the invention departed from prior art methods. To the contrary, as explained *supra* § II, the specification describes the system and its components broadly and generically, demonstrating that the claimed systems are all well-understood. Apart from a single disclosure stating that the interface can include software "configured to receive and store user data, contact data and other information stored in the memory 120" (at 4:47-53), there is no disclosure, teaching any code, data structure or algorithm that provides an inventive concept in exchanging contact information digitally on a network, rather than manually. *Id.* at 1:22-29. Had Ginko

discovered a new and inventive way to exchange information digitally, one would expect to find a description of that in the specification. But as explained *supra* § II, the specification is silent.

The claims of the Asserted Patent are also non-inventive when considered as an ordered combination. *See Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). As demonstrated in the example provided above, the system functions by first identifying a potential contact for the user. The system then receives from the user a request to become a contact with the potential contact, including a subset of user data (e.g., a business card with business contact information). The system then sends a communication to the potential contact to initiate a data exchange and, when the potential contact accepts, sets the user and potential contact as contacts of each other, such that the potential contact can view the user's business contact information. There is nothing inventive about this sequencing; it describes exactly how individuals would ordinarily exchange contact information in a normal and conventional order. Indeed, Ginko's complaint does not allege otherwise.

### C. This Case Should Be Dismissed With Prejudice

Ginko has already amended its Complaint and has never added any substantive allegations regarding patent eligibility. Dkt. 1, 29. Nor could it. Any amendment would be futile because the claims and the specification lack anything nearing an inventive concept. There can be no genuine issue of fact pled by Ginko that would preclude this Court from determining that the Asserted Claims are patent ineligible as a matter of law. *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 935 (Fed. Cir. 2020) (patent eligibility may be determined at the pleading stage where the specification confirms that the claims are abstract and lack inventive concept).

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court enter judgment that claims 10, 11, and 14 of Ginko's U.S. Patent No. 11,025,573 are invalid under 35 U.S.C. § 101.

Dated: March 23, 2026

Respectfully Submitted,

By: */s/ Garland T. Stephens*
Garland T. Stephens (NY Bar No. 2567162)

garland@bluepeak.law
Melissa L. Hotze (*pro hac vice forthcoming*)
hotze@bluepeak.law
John P. Brinkmann (*pro hac vice forthcoming*)
john@bluepeak.law
BLUE PEAK LAW GROUP LLP
3139 W Holcombe Blvd., PMB 8160
Houston, TX 77025
Telephone: (281) 972-3036

Jason F. Choy (Bar No. 277583)
choy@bluepeak.law
BLUE PEAK LAW GROUP LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306
Telephone: (213) 647-1228

Anna E. Dwyer (*pro hac vice forthcoming*)
anna@bluepeak.law
BLUE PEAK LAW GROUP LLP
PO Box 20006
New York, NY 10025
Telephone: (772) 631-6460

*Attorneys for Defendant APPLE INC.*