Anthony G. Simon (38745 MO)*
asimon@simonlawpc.com
Jeremiah W. Nixon (67148 MO)*
jnixon@simonlawpc.com
William B. Sullivan (73967 MO)*
bsullivan@simonlawpc.com
**THE SIMON LAW FIRM, P.C.**
1001 Highlands Plaza Drive, Suite 300
St. Louis, MO 63110
Telephone: (314) 241-2929

Jennifer J. Lee (203744 CA)
jennifer.lee@huschblackwell.com
**HUSCH BLACKWELL LLP**
1999 Harrison Street, 13th Floor
Oakland, CA 94612
Telephone: (415) 290-2741
Fax: 510-768-065

Jeffer Ali (0247947 MN)*
jeffer.ali@huschblackwell.com
**HUSCH BLACKWELL LLP**
80 South 8th street, Ste 4800
Minneapolis, MN 55402
Telephone: (612) 852-2700
Fax: 612-852-2701

Rudolph A. Telscher , Jr. (41072 MO)*
rudy.telscher@huschblackwell.com
**HUSCH BLACKWELL LLP**
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
314-480-1500
Fax: 314-480-1505

* *Admitted Pro Hac Vice*

***Attorneys for Plaintiff Ginko, LLC***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| GINKO, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>       Defendant. | Case No: 3:25-cv-11014-VC<br><br>**RESPONSE IN OPPOSITION TO APPLE'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101**<br><br>Date: May 28, 2026<br>Time: 10:00 A.M.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Judge Vince Chhabria |

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................................... 1

II. THE '573 PATENT ................................................................................................. 2

III. LEGAL STANDARD ............................................................................................... 4

IV. THE CLAIMS AT ISSUE PASS BOTH STEPS OF THE *ALICE* TEST,
NECESSITATING DENIAL OF APPLE'S MOTION ............................................. 5

    A. The claims at issue are not directed to an abstract idea under *Alice* step one .................. 6

       1. Apple's analogy rewrites the claims by adding an unclaimed human intermediary and
deleting the claim-required sequence ............................................................................. 6

       2. The asserted claims recite a claim-defined system operation, not a result-oriented
contact sharing idea ...................................................................................................... 8

    B. Apple's reliance on Silver State fails because Silver State did not recite the claim-
defined contact-formation sequence required here. ....................................................... 10

    C. Apple's characterization of the claims is in conflict with current Federal Circuit
Precedent. ........................................................................................................................ 12

    D. Even if the Court finds that the claims at issue are directed to an abstract idea, the
asserted claims contain an inventive concept satisfying *Alice* step two. ....................... 13

       1. Apple has not shown that the ordered combination is conventional ........................... 13

V. DISMISSAL WITH PREJUDICE WOULD BE IMPROPER AS GINKO COULD
AMEND ITS COMPLAINT TO RAISE GENUINE FACTUAL ISSUES. ...................... 15

VI. CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ............................................................................ 16

*Alice Corp. v. CLS Bank International*,
573 U.S. 208 (2014) ...................................................................................... passim

*Astellas Pharma, Inc. v. Sandoz Inc.*,
117 F.4th 1371 (Fed. Cir. 2024) ........................................................................... 15

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ................................................................. 13, 15, 16

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ......................................................................... 5, 13

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ............................................................................... 8

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..................................................................... 6, 8, 12

*Ericsson Inc. v. TCL Communication Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ............................................................................. 13

*Esignature Software, LLC v. Adobe, Inc.*,
656 F.Supp.3d 1041 (N.D. Cal. 2023) .................................................................. 11

*Fortinet, Inc. v. Forescout Techs., Inc.*,
730 F.Supp.3d 958 (N.D. Cal. 2024) ...................................................................... 5

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
896 F.2d 1542 (9th Cir. 1989) ................................................................................. 5

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015) ............................................................................... 6

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ............................................................................... 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ................................................................................................... 6

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ......................................................................... 8, 12

*Mortgage Application Techs., LLC v. MeridianLink, Inc.*,
839 F.Appx. 520 (Fed. Cir. 2021) ........................................................................... 6

*MyMail, Ltd. v. ooVoo, LLC*,
  934 F.3d 1373 (Fed. Cir. 2019)............................................................................ 5, 7

*Silver State Intellectual Techs. v. Facebook Inc.*,
  314 F.Supp.3d 1041 (N.D. Cal. 2018) ................................................................ 10, 11

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)............................................................................ 12, 13

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .............................................................................. 5

*Voter Verified, Inc. v. Election Systems & Software LLC*,
  887 F.3d 1376 (Fed. Cir. 2018)............................................................................ 5

*Weisner v. Google LLC*,
  51 F.4th 1073 (Fed. Cir. 2022) ............................................................................ 11

**Statutes**

35 U.S.C. § 101.................................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(c) ............................................................................................ 4, 14

RESPONSE IN OPPOSITION TO APPLE'S
MOTION FOR JUDGMENT ON THE
PLEADINGS UNDER 35 U.S.C. § 101

## I. INTRODUCTION

Plaintiff Ginko, LLC ("Ginko") by and through its undersigned attorneys respectfully submit the following response in opposition to Apple, Inc.'s ("Apple") Motion for Judgment on the Pleadings. Ginko respectfully requests that the Court deny Apple's motion in its entirety.

Apple's motion challenges claims 10, 11, and 14 of U.S. Patent No. 11,025,573 (the "'573 Patent"), arguing that they fail both steps of the *Alice* framework for patent eligibility under 35 U.S.C. § 101. The Court should deny Apple's motion for three independent reasons.

First, Apple changes the claims before analyzing them. The asserted claims do not merely recite "exchanging contact information." Claim 10 recites a claim-defined system operation involving request-contained permission, request-based sending, acceptance-triggered reciprocal contact-setting, and permission-governed subset visibility; claims 11 and 14 add separate location-matching limits tied to identification and post-request sending. Apple's human-intermediary story works only by replacing that claim-required sequence with an unclaimed human-mediated introduction. That is not abstraction; it is claim revision. The asserted claims do not claim the social purpose of meeting someone. They claim a system-defined order for when a potential contact is identified, when a request carrying a permission setting is received, when a communication is sent, when reciprocal contact status is created, and when a selected subset of user data becomes viewable.

Second, even if the Court proceeds to Alice step two, Apple identifies no pleadings-stage record basis—no cited prior-art system, no pleading admission, no intrinsic concession, and no expert evidence—establishing that the exact ordered combination in claims 10, 11, and 14 was well-understood, routine, and conventional as a matter of law. This factual dispute cannot be resolved in Apple's favor on a Rule 12(c) motion, where the Court must draw all inferences in favor of the non-moving party.

Third, even if the Court concludes the Complaint requires additional eligibility allegations, dismissal with prejudice would be improper. Ginko should be permitted to amend its Complaint to add factual allegations regarding the state of the art at the time of the invention and the

unconventional nature of the asserted ordered combination.

## II. THE '573 PATENT

The '573 Patent, titled "Method and Apparatus for Data Sharing," is not directed to simple data sharing in the abstract; it describes a system for identifying potential contacts using location information and governing the resulting data exchange through permission settings. ('573 Patent at 1:15–18). The patent identifies a problem in digital contact exchange: as physical business cards declined and contact information increasingly became digital, existing approaches did not adequately enable immediate or request-based exchange of digital contact information during impromptu meetings while preserving user control over what information would become viewable. (*Id.* at 1:20-29). The asserted claims address that gap through a claim-defined sequence involving location matching tied to identification and post-request sending, a request-contained permission setting, request-based sending, acceptance-triggered reciprocal contact-setting, and permission-governed subset visibility. (*Id.* at 18:1–27, 18:28–32, 18:40–52.)

Claim 10 is not satisfied by a one-time business-card handoff because the claimed operation does not end when information changes hands. Only after acceptance does the system set the user as a contact of the potential contact and set the potential contact as a contact of the user, while making the selected subset of user data viewable according to the request-contained permission setting. (*Id.* at 18:1–27.) The specification is consistent with that claimed architecture, describing user data that is viewable based on permission settings, data exchange limited by user-selected sharing settings, location-based identification of potential contacts, and request-based communications used to initiate the exchange. (*Id.* at 5:15–20, 5:32–46, 6:12–26, 6:35–64, 7:19–37, 7:49–57, 8:23–9:30.) The specification also describes related controls—such as public/private profile settings affecting acceptance, cancellation or modification of exchange requests, and selected-location exchange requests—that further reflect a system in which user-selected settings and location-based criteria govern when a contact relationship is formed and what data becomes viewable. (*Id.* at 14:39–62, 14:63–15:7, 15:8–24, 15:36–46, 15:63–16:24.) Those disclosures confirm the claim-level point: this is a location-matched, permission-governed contact-formation

sequence, not Apple's generalized idea of exchanging contact information. The paragraphs below explain how the specification supports that sequence, while claims 10, 11, and 14 supply the operative limitations for the § 101 analysis.

The system implements that relationship through an ordered device-executed sequence supported by user-device components. The '573 Patent describes a user device with processing, memory, location, communication, and user-interface components that store user/account information and support location-based identification and data sharing. (Fig. 1; *Id.* at 3:49–61, 4:3–14, 4:49–53, 5:1–10.) The '573 patent also discloses server and peer-to-peer communication pathways, including peer-to-peer signaling for proximity detection and peer-to-peer communication link 224 for direct exchange of location data and direct transmission of data sharing. (*Id.* at 6:21–26; Fig. 2; *Id.* at 7:19–37, 7:49–57.) In the Fig. 3 embodiment, the system identifies user data, determines user-device locations, identifies a potential contact within proximity, sends communications to initiate data sharing, and exchanges data. (Fig. 3; *Id.* at 7:61–8:13.)

The specification then explains how location matching operates within that sequence. The system may identify potential contacts by comparing location information to determine proximity, either in response to a user action, such as opening an application, or automatically after the user initiates the detection process. (*Id.* at 6:12–26, 7:1–37, 8:21–52, 9:31–48, 9:63–10:18.) The specification also describes identifying potential contacts within a defined proximity range relative to the user device or a selected geolocation, depending on the implementation. (*Id.* at 6:12–26, 8:23–52, 15:35–45, 15:63–16:24.) That disclosure corresponds to the asserted claims' location-matching limitations: claim 11 ties matching to identification, while claim 14 separately ties matching to post-request sending. (*Id.* at 18:28–32, 18:40–52.)

The specification separately describes the permission architecture that governs what user data becomes viewable after the contact relationship is formed. The user is associated with user data, including a subset of user data that may be viewable to a potential contact based on permission settings. (*Id.* at 5:15–20, 5:32–46, 6:35–45, 18:10–27.) Those permission settings

govern the amount and type of information shared with a potential contact. (*Id.* at 6:35–45, 8:59–9:30.) That disclosure corresponds to claim 10's request-contained permission setting and permission-governed subset visibility. (*Id.* at 18:1–27.) The asserted claims therefore reflect a location-matched and permission-governed architecture, not Apple's generalized label of "exchanging contact information."

The First Amended Complaint asserts claims 10, 11, and 14. (FAC ¶ 50.) Those asserted claims—not Apple's generalized label of "exchanging contact information"—define the § 101 inquiry. Claim 10 recites a system comprising a processor and memory with computer-executable instructions for identifying a potential contact, receiving from the user device a request comprising a first permission setting, sending a communication based on that request, and, in response to receiving an acceptance, setting the user and potential contact as contacts of each other while making the claimed subset of user data viewable according to the permission setting. ('573 Patent at 18:1–27.) Claim 11 adds location matching at the identification stage. It requires receiving a first location from the potential contact and identifying the potential contact when a second location of the user device matches the first location. (*Id.* at 18:28–32.) Claim 14 adds a separate location-matching constraint at the post-request sending stage. It requires receiving a first location associated with the user's request and, after receiving that request, sending the communication to the potential contact when the first location matches a second location associated with the potential contact. (*Id.* at 18:40–52.)

Together, claims 10, 11, and 14 recite a defined order of operations that Apple's motion does not analyze. Apple instead replaces that asserted sequence with the generalized idea of exchanging contact information.

## III. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is proper only "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios,*

*Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "In reviewing a motion under Rule 12(c), the court must assume that the facts alleged by the nonmoving party are true and must construe all inferences drawn from those facts in favor of the nonmoving party." *Fortinet, Inc. v. Forescout Techs., Inc.*, 730 F.Supp.3d 958, 963 (N.D. Cal. 2024). A motion under Rule 12(c) is "functionally identical" to a Rule 12(b)(6) motion, and the "same standard of review" applies. *Id.* (quoting *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). As such, determining patent eligibility at the Rule 12(c) stage is only appropriate "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Voter Verified, Inc. v. Election Systems & Software LLC*, 887 F.3d 1376, 1384 (Fed. Cir. 2018). And where a § 101 motion depends on a disputed claim reading, the Court must either adopt the nonmovant's construction or resolve the dispute to the extent necessary before deciding eligibility. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380-81 (Fed. Cir. 2019).

## IV. THE CLAIMS AT ISSUE PASS BOTH STEPS OF THE *ALICE* TEST, NECESSITATING DENIAL OF APPLE'S MOTION.

An invention is patent-eligible if it claims a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has interpreted § 101 to include an exception for "laws of nature, natural phenomena, and abstract ideas" as not patentable. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) (quoting *Alice Corp. v. CLS Bank International*, 573 U.S. 208, 216 (2014)).

To determine whether claimed subject matter is patent-eligible, courts must utilize a two-step framework that the Supreme Court outlined in *Alice*. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019). First, courts must "determine whether the claims at issue are directed to a patent-ineligible concept such as an abstract idea." *Id.* (quoting *Alice*, 573 U.S. at 218) (internal quotations omitted). Second, if a court determines that the claims are directed to a patent-ineligible concept, it must then "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into

a patent-eligible application. *Id.* (quoting *Alice*, 573 U.S. at 221).

Apple's motion fails at both steps. At step one, Apple over-abstracts the asserted claims by replacing their machine-executed sequence with the generic purpose of "exchanging contact information." At step two, Apple identifies no claim-specific prior-art system, pleading admission, intrinsic concession, or expert evidence establishing that the asserted ordered combination was well-understood, routine, and conventional.

### A. The claims at issue are not directed to an abstract idea under *Alice* step one.

When assessing claims at the first step of the *Alice* test, courts "cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)) (emphasis in original). Instead, the inquiry asks whether the claims' "character as a whole is directed to excluded subject matter." *Id.* (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). Courts must guard against "describing the claims at such a high level of abstraction and untethered from the language of the claims" lest the inquiry swallow all of patent law. *Enfish,* 822 F.3d at 1337. (citing *Alice*, 573 U.S. at 217). Apple's motion invites precisely this error.

#### 1. Apple's analogy rewrites the claims by adding an unclaimed human intermediary and deleting the claim-required sequence.

Apple reduces the asserted claims at issue to a single abstract concept of "sharing selected contact information between two individuals through an intermediary." ECF No. 95 ("Apple Mem.") at 6. In support, it constructs a human-intermediary analogy designed to suggest that the claimed system can be performed manually, with "Andy" acting as an intermediary at a conference or networking event between "Ben" and "Charles." *Id.* at 11-14. Apple does so in an attempt to argue that a longstanding practice performable by humans without a computer is an abstract idea, failing step one of the *Alice* test. *Id.* at 14 (quoting *Mortgage Application Techs., LLC v. MeridianLink, Inc.*, 839 F.Appx. 520, 525-26 (Fed. Cir. 2021)). The analogy is both legally and

technically deficient.

Apple's chart does not show that the asserted claims can be performed manually; it only illustrates Apple's rewritten abstraction. It is a different story built around an actor the claims do not recite. A human-analogy chart is useful only if the analogy tracks the claim. Apple's chart does the opposite as it adds an intermediary and omits the operative aspects of Claim 10: the request itself carries the permission setting and acceptance triggers reciprocal contact setting. Claims 11 and 14 separately limit identification and post-request sending.

Apple's motion depends on its hidden claim-scope assumptions. Those claim-scope disputes matter to eligibility. Under *MyMail*, if a § 101 motion depends on a disputed claim reading, the Court must adopt Ginko's view at this stage or defer eligibility until claim construction. *MyMail*, 934 F.3d at 1379 (" [I]f the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis.").

In the alternative, if the Court is not willing to adopt Ginko's construction, Ginko requests a *Markman* hearing to resolve this necessary claim construction dispute. The issue is highly consequential as without this fabricated limitation, Apple's analogy, its over-generalization of the claims, and its step one theory collapse.

The specification confirms that the '573 Patent is directed to controlled, permissioned digital contact relationships—not a one-time business-card handoff. While the asserted claims do not require the Court to rely on every disclosed embodiment. They stand on their own because they require a permission-bearing request, acceptance-triggered reciprocal contact-setting, permission-governed subset visibility, and location matching tied to specific operations. Regardless, the broader specification reinforces why Apple's abstraction is too high-level, but the dispositive point is narrower: Apple must analyze the asserted ordered combination, not replace it with the generalized purpose of contact exchange.

Apple's reliance on the problem statement from the '573 Patent is likewise misplaced. Apple argues that the patent "itself identifies the need addressed by the alleged advance as simply

digitizing a conventional exchange of contact information." Apple Mem. at 6. But the eligibility inquiry does not stop at the background section. The Court must examine what the asserted claims actually require. *Enfish*, 822 F.3d at 1339; *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016).

Here, the claimed solution is not "digitizing business cards." It is a machine-implemented architecture comprising a request-contained permission setting, a communication sent based on that request, acceptance-triggered reciprocal contact-setting, permission-governed subset visibility, and location-matching constraints tied to the identification and sending operations recited in claims 11 and 14. Apple's background-focused framing therefore does not answer the step-one question. A problem-focused background section does not doom claims that recite a specific implementation of a claim-defined system operation.

### 2. The asserted claims recite a claim-defined system operation, not a result-oriented contact sharing idea.

The Federal Circuit has warned courts not to describe claims at such a high level of abstraction that the claim language no longer matters. *Enfish*, 822 F.3d at 1337. And claims are not abstract when they recite a specific manner of performing a computer operation rather than a generic result. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362–63 (Fed. Cir. 2018). The proper question is not whether processors, memory, communications components, or location information were known in isolation. Nor is Ginko required to show that the asserted claims make generic processors faster, memory larger, or wireless radios more efficient. Apple's generic-component argument answers the wrong question: the asserted claims do not rest on novelty of the hardware in isolation, but on the claim-defined system operation that uses those components in a specific ordered sequence. The question is whether the asserted claims, read as a whole, are directed to a specific implementation rather than the generic result of "exchanging contact information." *Enfish*, 822 F.3d at 1337–39; *Core Wireless*, 880 F.3d at 1362–63. They are.

Claim 10 does not claim the result "share contact information." Apple cannot dismiss these limitations as litigation labels for ordinary social steps. Each one tracks express claim language

defining what the system receives, when the system sends, when reciprocal contact status is created, and what subset of user data becomes viewable after acceptance. Claim 10 recites how the claimed system forms a digital contact relationship and governs what user data becomes viewable within that relationship. The request itself must comprise the first permission setting. The system must send the communication based on that request. The system must receive acceptance before setting the user as a contact of the potential contact and setting the potential contact as a contact of the user. And the claimed subset of user data becomes viewable to the potential contact according to the request-contained permission setting. That is the asserted machine-executed sequence Apple omits.

The point is not the semantic content of the permission setting; it is the claim-required placement and enforcement of that setting—the permission is carried in the request and governs subset visibility only after acceptance triggers reciprocal contact-setting.

Claims 11 and 14 further confirm that the asserted claims are not merely directed to two people being in the same place or exchanging contact information. Claim 11 limits the identification operation: the system receives a first location from the potential contact and identifies the potential contact when a second location of the user device matches that first location. Claim 14 separately limits the post-request sending operation: after receiving the user's request, the system sends the communication to the potential contact only when the first location associated with the request matches a second location associated with the potential contact. Apple collapses those separate limitations into "nearby users," but the claims tie location matching to different operations in the claimed sequence. That distinction matters. Claim 11 is a front-end location match for identifying the potential contact. Claim 14 is a later, post-request location match for sending the communication. Apple's "same location" label erases the fact that the asserted claims use location matching at two different points in the system operation.

The prosecution history reinforces the same point. The Examiner applied Sherman against then-pending claim 12 (the system claim that issued as claim 10) based on Sherman's PIN-based invite, group access controls, user-defined profiles, and synchronization of contact information.

(Ex. A, Aug. 19, 2020 Office Action at 7–9.) But Ginko distinguished Sherman because it did not teach the same claim-defined architecture: a request from the user device to the potential contact that itself includes the first permission setting, a communication sent based on that request, and subset visibility governed by that request-contained permission setting. (Ex. B, Sept. 21, 2020 Amendment at 12.) Ginko did not obtain allowance by claiming generic contact exchange. It obtained allowance over a contact-exchange reference by narrowing the claim to the request-contained permission architecture Apple now removes from the analysis. That prosecution history does not decide eligibility, but it confirms the central problem with Apple's motion: Apple's abstraction deletes the limitations that defined the allowed claim scope. Ginko explained that "a request, which includes the first permission is sent from the user to the potential contact," that "[n]owhere does Sherman teach a first permission that is included in a request from a user to a potential contact," and that Sherman's cited passages concerned joining a group and group permissions rather than "a communication [that is based on a request from the user] to the potential contact to initiate a data exchange." (Ex. B at 12.)

Ginko does not cite the prosecution history as a substitute for the *Alice* analysis or as independent proof of eligibility. It is relevant for a narrower reason: it confirms that Apple's abstraction sweeps away the very claim limitations that defined the allowed claim scope.

The asserted claims are therefore materially different from claims that merely collect, store, or display information on generic computers. They recite a system-enforced contact-establishment sequence in which permission, acceptance, subset visibility, reciprocal contact-setting, and location matching interact in a defined order. Apple cannot avoid that sequence by labeling the claims "contact exchange" and then analyzing only the label.

**B.      Apple's reliance on Silver State fails because Silver State did not recite the claim-defined contact-formation sequence required here.**

Apple relies heavily on *Silver State Intellectual Techs. v. Facebook Inc.*, 314 F.Supp.3d 1041 (N.D. Cal. 2018) to argue that this district has previously found "analogous claims" ineligible under § 101. Apple Mem. at 14. In conclusory fashion, Apple argues that the claims in *Silver State*

are "conceptually no different" from the asserted claims of the '573 Patent. *Id.* at 15. Its only support is that both purportedly "recite the basic concept of selectively sharing contact information between nearby users of personal communication devices." *Id.* That formulation assumes Apple's abstraction rather than proving it.

First, the representative claim in *Silver State*, at its core, discloses a method of: (1) allocating memory for a user; (2) associating a mobile device with the user; (3) storing the location data of the user; (4) storing additional location data of the user later in time; (5) obtaining a whitelist of potential requesters of the location data; (6) storing the whitelist; and (7) providing the location data to the whitelist. 314 F.Supp.3d at 1047. The court found these claims "directed to the abstract idea of storing and selectively sharing location-based information," noting that the concept could be "carried out using a pen and paper." *Id.* The Silver State claims thus mapped directly onto the concept of computerizing a travel log while selectively sharing it with possible requesters. There was no change, no addition, no improvement to the manual process. The claims of the '573 Patent are fundamentally different.

*Silver State* lacked analogous limitations to those that matter here, limitations differentiated the claimed system from a human analog. Here, the '573 Patent does not simply digitize business cards, but instead discloses a system of comprising, *inter alia*, a specific data architecture and constrained order of operations to achieve the system's purpose. Put simply, Apple's analogy to *Silver State* loses all relevance if the Court does not accept Apple's overly-generalized abstraction.

Each of Apple's other analogized cases suffers from the same flaw. They describe a commonly known business method merely performed on a computer, the "do it on a computer flaw," their tenuous relevance premised on Apple's over-generalization of the '573 Patent's claims. *Esignature Software, LLC v. Adobe, Inc.*, 656 F.Supp.3d 1041, 1049 (N.D. Cal. 2023). In *Weisner v. Google LLC*, 51 F.4th 1073, 1082 (Fed. Cir. 2022), the Federal Circuit found that the claims of the subject patent were simply "directed to creating a digital travel log." Apple attempted to analogize the '573 Patent to *Weisner* by arguing that "[j]ust as in *Weisner*, the ['573 Patent] digitizes a conventional method of organizing human activity using computing devices comprised

of generic components." Apple Mem. at 16. Apple attempted to analogize to *Esignature* by arguing that the '573 Patent "simply recites an existing practice performed on a computer." *Id.* (emphasis omitted). Finally, Apple attempted to analogize to *Mortg. Application Techs.*, 839 F.App'x at 522-23, by arguing that the '573 Patent "merely automates the exchange and storage of information." Apple Mem. At 16.

Notably, Apple failed to meaningfully discuss the claims for any of the above cases, and for good reason: the claims are not actually analogous. Apple has instead found cases in which the court invalidated patents based on similar grounds to Apple's over-generalizations of the '573 Patent. The tenuous at best connections illustrate that Apple has worked backwards in its analysis, manipulating and framing its generalization to match prior decisions. Such an approach is improper because the analysis must begin with the language of the claims and remain tethered to the language therein. *Enfish*, 822 F.3d at 1337. When the claims are given their proper scope, Apple's analogies are unavailing and inapposite.

The Court, therefore, should find that the claims of the '573 Patent are not directed to an abstract idea and satisfy step one of the *Alice* test.

**C.      Apple's characterization of the claims is in conflict with current Federal Circuit Precedent.**

Apple argues that the claims are directed to an abstract idea because they are "purely functional claims." Apple Mem. at 17-18. Relying on *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017), Apple argues that the claims must be directed to an abstract idea because the claims and specification do not sufficiently describe the "computer-executable instructions that are necessary to enable the system to perform the claimed methods." Apple Mem. at 18. That argument improperly converts § 101 into a source-code or enablement inquiry. The Federal Circuit has rejected such a requirement. *See Enfish*, 822 F.3d at 1339 (finding claims with no listed algorithm or code to be patent-eligible); *McRO*, 837 F.3d at 1316 (same). The focus is, instead, on whether the claims are "directed to a specific implementation of a solution to a problem in the software arts." *Enfish*, 822 F.3d at 1339.

Apple's fallback—that the claims do not identify a specific communication method, sensor, protocol, or algorithm—asks the wrong question. Specificity at step one is not limited to source code or hardware schematics. The inquiry is whether the claims impose concrete constraints on system operation. These claims do. Unlike the result-only claims in *Two-Way Media*, claim 10 does not merely require a system to "share contact information"; it specifies where the permission setting appears, when the system sends, what acceptance triggers, and when the selected subset becomes viewable. Claim 10 requires the request itself to carry the permission setting, the system to send based on that request, and acceptance to be received before reciprocal contact-setting occurs. Claims 11 and 14 separately limit identification and post-request sending through location matching. That claim-defined structure is not a purely functional result; it is the asserted order of operations Apple omits.

**D.      Even if the Court finds that the claims at issue are directed to an abstract idea, the asserted claims contain an inventive concept satisfying *Alice* step two.**

Step two of the *Alice* test requires that the court "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Ericsson Inc. v. TCL Communication Tech. Holdings Ltd.*, 955 F.3d 1317, 1325 (Fed. Cir. 2020) (quoting *Alice*, 573 U.S. at 217) (internal quotations omitted). The step is a "search for an inventive concept" that is sufficient to show that the patent "amounts to significantly more than a patent upon the ineligible concept itself. *Id.* (quoting *Alice*, 573 U.S. at 217) (internal quotations omitted). "The second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quoting *Content Extraction & Transmission LLC*, 776 F.3d at 1347) (cleaned up) (internal quotations omitted).

**1.      Apple has not shown that the ordered combination is conventional**

Apple's step-two argument collapses into its step-one argument, asserting that the sequencing of steps in the asserted claims "describes exactly how individuals would ordinarily

exchange contact information in a normal and conventional order." Apple Mem. at 20. But that argument repeats Apple's abstraction; it does not establish conventionality of the claimed combination.

The relevant question at step two is not whether the underlying social practice of exchanging contact information was conventional, but whether the specific ordered combination of computer-implemented elements recited in claims 10, 11, and 14 was well-understood, routine, and conventional at the time of the invention. A human-introduction analogy is not a pleadings-stage record showing that this computer-implemented ordered combination was conventional. Apple offers no pleadings-stage record basis to conclude that it was.

The ordered combination here is the point. Claim 10 requires the request itself to carry the permission setting, the system to initiate communication based on that request, the system to set each party as a contact of the other only after receiving acceptance, and the request-carried permission setting to govern whether the claimed subset is viewable. Claims 11 and 14 then add separate location-based limits on different operations: claim 11 limits identification, while claim 14 limits post-request sending. The Claims disclose a system-defined contact-formation sequence.

Apple cannot carry its step-two burden by atomizing the claims, labeling each physical component generic, and then declaring the combination conventional. Step two does not ask whether processors, memory, communications, location information, or stored user data were known in isolation. It asks whether Apple has shown, as a matter of law, that the asserted ordered combination was well-understood, routine, and conventional. Apple has not done so.

Apple identifies no claim-specific prior-art system, pleading admission, intrinsic concession, expert evidence, or other pleadings-stage record basis establishing that it was routine to use a contact request carrying a permission setting for subset visibility, trigger reciprocal contact-setting only upon acceptance, govern subset visibility according to that permission setting, and tie location matching to the identification and sending operations recited in claims 11 and 14. That omission is dispositive at Rule 12(c). Apple cannot prove conventionality of an ordered computer-implemented combination by saying that people have long exchanged business cards.

The question is not whether contact information existed, or whether processors and memory existed, or whether location information existed. The question is whether this ordered combination existed as a well-understood, routine, and conventional system operation. Apple never identifies one. The omission is all the more glaring when the Court considers that the '573 Patent and its claims overcame rejections during prosecution and is afforded a presumption of validity, even as it pertains to challenges under 35 U.S.C. § 101. *Astellas Pharma, Inc. v. Sandoz Inc.*, 117 F.4th 1371, 1378 (Fed. Cir. 2024).

As set forth in Section IV.A*, supra*, the asserted claims describe far more than the exchange of contact information. They recite a permission-governed contact-establishment sequence in which the request carries the sharing rule, acceptance triggers reciprocal contact-setting, subset visibility follows the permission setting, and location matching limits the identification and sending operations. Apple's persistent minimization of these claim limitations is no more persuasive at step two than it was at step one.

The ordered combination of these asserted claim limitations, not any single feature in isolation, is sufficient at this stage to defeat judgment on the pleadings because Apple has not shown that the combination was well-understood, routine, and conventional as a matter of law.

## V. DISMISSAL WITH PREJUDICE WOULD BE IMPROPER AS GINKO COULD AMEND ITS COMPLAINT TO RAISE GENUINE FACTUAL ISSUES.

"The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368. In *Berkheimer*, the Federal Circuit reversed the district court because "the district court erred in concluding there are no underlying factual questions to the § 101 inquiry." *Id.* at 1369. Because the specification contained an "inventive feature," the court found that the improvements, "to the extent they are captured in the claims, create[d] a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.*

The Federal Circuit has held that dismissal with prejudice is improper where a plaintiff could plausibly add factual allegations sufficient to raise a genuine factual dispute on the § 101

inquiry. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126–27 (Fed. Cir. 2018). The *Aatrix* court reversed a dismissal with prejudice because the plaintiff sought to amend its complaint to add allegations about the state of the art at the time of the invention, allegations that, if true, would have established that the claimed combination was not conventional. Notably, the plaintiff in *Aatrix* sought leave to amend its already-amended complaint, so any argument by Apple that Ginko has already had one opportunity to amend is inapposite.[1] The relevant inquiry is whether Ginko can plausibly allege facts that would preclude resolution of the § 101 question as a matter of law, and it can.

If amendment is required, Ginko can add concrete factual allegations showing that prior proximity-exchange systems—including Bump, NFC-based sharing, BLE-based contact apps, and other contemporaneous systems— did not contain the asserted ordered combination: a request carrying a permission setting for subset visibility; acceptance-triggered reciprocal contact-setting; permission-governed subset visibility within the accepted relationship; and location matching tied to the identification and post-request sending operations recited in claims 11 and 14. For example, Ginko can allege that contemporaneous systems generally fell into separate categories: bump-to-transfer systems that initiated a one-time transfer; NFC or QR-code systems that shared selected contact data without forming the claimed reciprocal contact relationship; social-network or address-book systems that used invitations or profiles but did not include the claimed request-contained permission setting; and location-aware systems that identified nearby users but did not separately tie location matching to both identification and post-request sending. Ginko can further allege that no conventional system combined these functions in the claimed order. Those allegations would create, at minimum, a factual dispute under *Berkheimer* and *Aatrix* and would foreclose dismissal with prejudice.

---

[1] Ginko notes that its prior amendment did not address § 101 specifically because it had no reason to anticipate Apple would challenge eligibility on this theory until Apple filed this motion.

Ginko can also allege that, as of the priority date, no conventional system used that ordered combination to solve the problem addressed by the asserted claims: machine-controlled formation of a digital contact relationship in which the request itself carries the sharing rule, the acceptance event triggers reciprocal contact-setting, the system governs subset visibility within the resulting contact relationship, and location matching limits the claimed identification and sending operations.

Those allegations, accepted as true at the pleading stage, would preclude resolution of the § 101 inquiry as a matter of law. Apple cannot obtain dismissal with prejudice by arguing that no facts could save the asserted claims while offering no claim-specific prior-art system, pleading admission, intrinsic concession or expert evidence showing that this exact ordered combination was well-understood, routine, and conventional. If the Court concludes that the Complaint as currently pled is deficient, it should grant leave to amend rather than dismiss with prejudice.

## VI.    CONCLUSION

The asserted claims of the '573 Patent are not directed to Apple's generalized abstraction. They recite a specific, system-enforced, permission-governed contact-establishment sequence. Apple's step-one argument rests on an "intermediary" it invented and inserted into claims that contain no such term. Apple's step-two argument repeats the same error by asking whether ordinary people exchange contact information, rather than whether the claimed sequence was well-understood, routine, and conventional.

Apple's motion therefore fails twice: it does not analyze the asserted claims at step one, and it does not prove conventionality at step two. Claim 10 requires a request-contained permission setting, request-based sending, acceptance-triggered reciprocal contact-setting, and permission-governed subset visibility. Claims 11 and 14 add separate location-matching limitations at different points in the system operation—identification and post-request sending. Apple cannot obtain judgment on the pleadings by collapsing those limitations into the generalized idea of "exchanging contact information."

At minimum, Apple has not shown on the pleadings that the limitations recited in claims 10, 11, and 14 were well-understood, routine, and conventional. Nor has Apple shown that dismissal with prejudice would be proper. If the Court concludes the current Complaint requires additional eligibility allegations, Ginko can amend to add facts regarding the state of the art and the non-conventional nature of the claimed sequence.

Plaintiff Ginko, LLC therefore respectfully requests that the Court deny Apple's Motion for Judgment on the Pleadings in its entirety. In the alternative, should the Court find the Complaint insufficient as currently pled, Ginko respectfully requests leave to amend.

Dated: April 30 ,2026

Respectfully Submitted,

*/s/ Jeffer Ali*

Anthony G. Simon (38745 MO)*
asimon@simonlawpc.com
Jeremiah W. Nixon (67148 MO)*
jnixon@simonlawpc.com
William B. Sullivan (73967 MO)*
bsullivan@simonlawpc.com
**THE SIMON LAW FIRM, P.C.**
1001 Highlands Plaza Drive, Suite 300
St. Louis, MO 63110
Telephone: (314) 241-2929

Jennifer J. Lee (203744 CA)
jennifer.lee@huschblackwell.com
**HUSCH BLACKWELL LLP**
1999 Harrison Street, 13th Floor
Oakland, CA 94612
Telephone: (415) 290-2741
Fax: 510-768-065

Jeffer Ali (0247947 MN)*
jeffer.ali@huschblackwell.com
**HUSCH BLACKWELL LLP**
80 South 8th street, Ste 4800
Minneapolis, MN 55402
Telephone: (612) 852-2700
Fax: 612-852-2701

Rudolph A. Telscher , Jr. (41072 MO)*
rudy.telscher@huschblackwell.com
**HUSCH BLACKWELL LLP**
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
314-480-1500
Fax: 314-480-1505

*Admitted Pro Hac Vice*

***Attorneys for Plaintiff Ginko, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April, 2026, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

By: _/s/ Jeffer Ali_ _____