GARLAND T. STEPHENS (NY Bar No. 2567162)
garland@bluepeak.law
MELISSA L. HOTZE *(admitted pro hac vice)*
hotze@bluepeak.law
JOHN P. BRINKMANN (*admitted pro hac vice*)
john@bluepeak.law
BLUE PEAK LAW GROUP LLP
3139 W Holcombe Blvd., PMB 8160
Houston, TX 77025
Telephone: (281) 972-3036

JASON F. CHOY (Bar No. 277583)
choy@bluepeak.law
BLUE PEAK LAW GROUP LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306
Telephone: (213) 647-1228

ANNA E. DWYER (*admitted pro hac vice*)
anna@bluepeak.law
BLUE PEAK LAW GROUP LLP
PO Box 20006
New York, NY 10025
Telephone: (772) 631-6460

*Attorneys for Defendant APPLE INC.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GINKO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:25-cv-11014-VC<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101**<br><br>**JURY TRIAL DEMANDED**<br><br>Date: May 28, 2026<br>Time: 10:00 A.M.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

I. ARGUMENT ..... 1

A. Step One: The Claims Are Directed To An Abstract Idea ..... 1

B. Step Two: The Claims Lack Any Inventive Concept ..... 7

C. Dismissal with Prejudice Is Appropriate ..... 9

II. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases**


*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
569 U.S. 576 (2013) ........ 6

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
955 F.3d 971 (Fed. Cir. 2020) ........ 9

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ........ 8, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ........ 8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ........ 4

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ........ 9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245, 1258 (Fed. Cir. 2014) ........ 8

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........ 4, 5, 6

*Esignature Software, LLC v. Adobe Inc.*,
656 F. Supp. 3d 1041 (N.D. Cal. 2023) ........ 6

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ........ 8

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ........ 3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66, 89–90 (2012) ........ 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........ 4

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
839 F. App'x 520 (Fed. Cir. 2021) ........ 6

*MyMail, Ltd. v. ooVoo, LLC*,
934 F.3d 1373 (Fed. Cir. 2019) ........ 2

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ........ 6, 9

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) ........ 9

*Silver State Intellectual Techs., LLC v. Facebook Inc.*,
314 F. Supp. 3d 1041 (N.D. Cal. 2018) ........ 5

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)........................................................................................ 9

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)........................................................................................ 3

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ........................................................................................ 3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)........................................................................................ 4

*Weisner v. Google LLC*,
51 F.4th 1073 (Fed. Cir. 2022) ........................................................................................ 6

*WhitServe LLC v. Donuts Inc.*,
809 F. App'x 929 (Fed. Cir. 2020) .............................................................................. 8, 9

**Statutes**

35 U.S.C. § 101 ...................................................................................................... passim

35 U.S.C. § 102 ........................................................................................................... 6, 9

35 U.S.C. § 103 ........................................................................................................... 6, 9

# I. ARGUMENT

Ginko's opposition fails to engage with Apple's motion on its merits. It does not identify a single claim limitation that Apple's analogy fails to capture. It does not propose a claim construction for any term. It does not explain what "specific data architecture" or "constrained order of operations" the claims recite beyond exchanging contact information in an ordinary sequence. And it does not identify a single case in which claims analogous to those at issue survived § 101 review. Instead, Ginko recharacterizes the claim steps using lawyer-coined labels, invokes inapposite precedent, and raises arguments that conflate novelty with eligibility. None of these strategies overcomes the fundamental deficiency Apple identified: the asserted claims recite nothing more than the abstract idea of exchanging selected contact information between two individuals through an intermediary, using generic hardware that the specification admits was well known, and lacking any inventive concept in its ordinary sequence of steps.

## A. Step One: The Claims Are Directed To An Abstract Idea

Apple's motion demonstrated that the asserted claims are directed to the abstract idea of exchanging selected contact information between two individuals through an intermediary, a practice humans have performed for decades, at least. Dkt. 95 at 6–9. Apple mapped every limitation of the asserted claims to this conventional human activity. *Id.* Ginko's opposition does not refute this showing. It fails to identify a single claim limitation not captured by Apple's human analogy mapping and fails to identify any claim term or propose any construction that would alter the analysis. Apple's mapping encompasses the entire scope of the claims and precisely tracks the claim language as shown in the chart in Apple's motion. *Id.* at 7–8.

***Ginko Has Not Proposed Any Claim Construction.*** Ginko repeatedly asserts that Apple does not give the claims their "proper scope," that Apple's characterization is "over-generaliz[ed]," and that the analysis must "remain tethered to the language [of the claims]." Dkt.

112 at 7, 11, 12. But Ginko never tells the Court what the "proper scope" actually is or how Apple's characterization is wrong. It does not propose a claim construction for any term, nor does it identify any claim limitation that Apple overlooked. Instead, Ginko objects to Apple's framing while offering no competing framework of its own. Ginko cannot overcome a § 101 challenge by asserting that Apple's characterization is wrong without ever explaining what, precisely, is wrong.

For these reasons, Ginko's invocation of *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379–81 (Fed. Cir. 2019) is unavailing. *MyMail* holds that when parties "raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." 934 F.3d at 1379. But *MyMail* presupposes that the non-movant has actually *proposed* a construction for the Court to adopt. Here, Ginko has not identified a single claim term it believes should be construed, has not proposed any construction for any term, and has not explained how any particular construction would alter the eligibility analysis. There is, therefore, no "dispute" for this Court to resolve and no construction for this Court to adopt. *MyMail* is a procedural safeguard for parties who identify a specific construction that would alter the § 101 inquiry—it is not a blanket objection that a patentee can invoke simply to forestall eligibility review.

***Ginko's "Claim-Defined System Operation" Is Just the Abstract Idea Restated.*** The centerpiece of Ginko's opposition is its assertion that the claims recite a "claim-defined system operation" rather than the abstract idea of exchanging contact information. Dkt. 112 at 8–10. Ginko's argument simply recharacterizes each step of the asserted claims in lawyer-coined labels—"request-contained permission setting," "acceptance-triggered reciprocal contact-setting," "permission-governed subset visibility"—terms not found in the claims or the specification, and treats those labels as though they were technical innovations. *Id.* But relabeling an abstract idea

does not make it any less abstract. Ginko's labels simply describe, in different words and with technical-sounding jargon not used in the patent, the same sequence of steps that humans can and have conventionally performed to exchange contact information, as described in Apple's human analogy. Dkt. 95 at 7–9.

***Apple's Human Analogy Precisely Tracks the Claim Language.*** Ginko criticizes Apple's human analogy, arguing that it "rewrites the claims" by "adding an unclaimed human intermediary[.]" Dkt. 112 at 6–7. Ginko misunderstands the purpose of the analogy. The analogy demonstrates that every *operation* recited in the claims can be performed by humans without a computer. The intermediary is simply the actor performing the steps that the claimed "system" performs. The Federal Circuit routinely compares claims to analogous human activities to identify abstract ideas. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogizing an email filtering system to a "brick-and-mortar" corporate mailroom); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (finding claims abstract because they described operations that "can be performed mentally or with pencil and paper"). This is a telltale sign that the claims are abstract. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023) ("A telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper.") (cleaned up).

Critically, while Ginko asserts that the analogy "omits the operative aspects of Claim 10" (Dkt. 112 at 7), it never identifies a single claim limitation that the analogy fails to capture. Ginko's assertion that Apple's analogy "delet[es] the claim-required sequence" is also incorrect. Apple's analogy precisely tracks the claim limitations step-by-step, in order. Dkt. 95 at 7–9.

Ginko also argues that Apple's "purely functional" characterization "improperly converts § 101 into a source-code or enablement inquiry." Dkt. 112 at 12. It does not. Apple's point is not that the claims must disclose source code to be eligible. It is that claims that describe only *what* a system does—without any specificity as to *how* to do it—are a paradigmatic case of abstractness. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). The claims here recite no specific technical implementation. They recite only the generic functional steps of a contact exchange.

***Ginko Identifies No Analogous Case.*** While Ginko attempts to distinguish the cases Apple cited, Ginko does not identify a single case in which claims analogous to the Asserted Patent's claims survived § 101 review. Ginko invokes *Enfish*, *Core Wireless*, and *McRO* for general legal principles about the step-one inquiry, but none of those cases involved claims analogous to the claims in this case. In *Enfish*, the claims were directed to a specific data structure—a self-referential table—that improved how a computer stored and retrieved data and differed from conventional database structures. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337–39 (Fed. Cir. 2016). Here, by contrast, the claims recite no specific data structure, no improvement to how data is stored or retrieved, and no departure from conventional computing architecture—just the result of exchanging selected contact information. In *Core Wireless*, the claims recited a specific user interface improvement that solved a recognized problem with small-screen devices. 880 F.3d at 1362–63. Here, the specification identifies no specific problem with existing contact-exchange systems and proposes no specific user-interface solution. *McRO* concerned specific rules for automating lip synchronization in computer animation. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313–16 (Fed. Cir. 2016). Here, the claims recite no specific rules or algorithms—just the generic functional steps of a contact exchange. The

claims do not improve how a processor processes, how memory stores, how a network transmits, or how a location sensor detects. They describe the *result* of exchanging selected contact information—not a specific technical means of achieving it. This is not enough to confer eligibility, even according to the precedent Ginko cites. *See Enfish*, 822 F.3d at 1335–36 ("the first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific asserted improvement in computer capabilities…or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.").

By contrast, the cases Apple cited are directly on point. Ginko argues that the claims in *Silver State* are distinguishable because they "lacked analogous limitations[.]" Dkt. 112 at 10–11. But Ginko concedes that the Court found the claims abstract in *Silver State* because they "mapped directly onto the concept of computerizing a travel log while selectively sharing it with possible requesters. There was no change, no addition, no improvement to the manual process." Dkt. 112 at 11. That is exactly why the claims here are abstract: they map directly onto the concept of exchanging business cards through an intermediary, and they do not change, add, or improve the manual process of doing so. Just as in *Silver State*, the claimed steps "are undisputedly well-known functions that humans have traditionally performed for decades[.]" *Silver State*, 314 F. Supp. 3d at 1047.

Ginko's own characterization of why the claims differ from *Silver State* underscores the absence of any concrete technical content. Ginko asserts that "the '573 Patent does not simply digitize business cards, but instead discloses a system of comprising, *inter alia*, a specific data architecture and constrained order of operations to achieve the system's purpose." Dkt. 112 at 11. But this sentence is itself an abstraction. It does not identify what the "specific data architecture" is; it does not explain what "constrained order of operations" means beyond the fact that the steps

occur in a sequence—a feature common to nearly every method claim ever written; and it does not say what "the system's purpose" is other than exchanging contact information, which is simply the abstract idea. If the claims truly recited a specific technical architecture, Ginko would be able to point to it. It cannot, because the claims do not.

The same is true of *Weisner*, *Esignature*, and *Mortgage Application Technologies*. Apple discussed each case and explained that, like here, each involved claims that automated a long-standing human practice using generic computing components. *See* Dkt. 95 at 9–12.

***Ginko Improperly Conflates the §§ 102/103 Novelty Inquiry with the § 101 Eligibility Inquiry.*** Ginko argues that the prosecution history "confirms that Apple's abstraction sweeps away the very claim limitations that defined the allowed claim scope." Dkt. 112 at 10. This argument fundamentally confuses the §§ 102/103 novelty inquiry with the § 101 eligibility inquiry. That the claims were distinguished from a prior art reference during prosecution says nothing about whether they are directed to an abstract idea. Claims can be both novel and abstract. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility.") (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013)).

Ginko's prosecution history argument obscures a fundamental deficiency: under § 101, the question is not whether the claims recite limitations absent from a prior art reference; it is whether the claims are "directed to" an improvement in the functionality of the computer or other technology, or instead to an abstract idea implemented on generic components. *See Enfish*, 822 F.3d at 1335–36 (asking "whether the focus of the claims is on the specific asserted improvement in computer capabilities"). A patent examiner's determination that the claims were novel does not

establish that the claims are directed to patent-eligible subject matter. Indeed, Ginko's own concession that the "prosecution history does not decide eligibility" (Dkt. 112 at 10) is correct. Therefore, whether the claims are *different* from the prior art has no bearing on whether the claims are *directed to an improvement in technology*.

Accordingly, here the asserted claims are directed to the abstract idea of exchanging selected contact information between two individuals through an intermediary.

**B. Step Two: The Claims Lack Any Inventive Concept**

Ginko's step-two argument reduces to a single contention: that the inventive concept in the claims is the "ordered combination[.]" Dkt. 112 at 13–15. Ginko does not argue that any *particular set of elements* of the claims is inventive; rather its sole argument is that the *ordered combination* of elements provides the inventive concept. Ginko's step-two arguments fail for two reasons.

***First***, Ginko's assertion that Apple has not identified any record basis establishing that the "exact ordered combination" was well-understood, routine, and conventional is incorrect. The ordering of steps in the claims is well-understood, routine, and conventional because it is nothing more than the ordinary order one would expect when exchanging contact information. Apple established this in its opening brief by precisely mapping each element—and the claimed ordered combination—onto conventional human behavior. Dkt. 95 at 7–9. One person (1) identifies a potential contact for a colleague, (2) obtains the colleague's sharing preferences, (3) communicates with the potential contact, (4) receives acceptance from the potential contact, and (5) then exchanges the colleague's selected information. This is not a novel or unconventional arrangement; it is the natural and expected sequence of steps in exchanging contact information through an intermediary.

Ginko has done nothing to show otherwise, nor has it even argued that the claimed system "overrides the routine and conventional sequence of events[.]" *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). Ginko never identifies any element missing from this mapping, and does not respond to any of the deficiencies Apple identified in the claims and specification. *See* Dkt. 95 at 7–9, 14–15. Ginko does not point to any passage in the specification disclosing that the claimed order of steps offers a specific technical solution to a technical problem, nor does it explain how any such solution is reflected in the claims. What the Asserted Patent discloses and claims—generic components performing generic functions in an expected order with no technical detail—confirms the absence of any inventive concept.

***Second***, the question under step two is not whether the exact ordered combination existed in the prior art. The question is whether the claims add something "significantly more" than the abstract idea itself. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). They do not. As Apple explained, the claims and the specification describe "well-known" computer components defined by their function. Dkt. 95 at 1–5, 12–14. The claims—and particularly their ordered steps—add nothing to the abstract idea beyond implementing it on generic hardware that the specification admits was well known. Courts have routinely found no inventive concept under similar facts. *See Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014).

Moreover, contrary to Ginko's assertion (Dkt. 112 at 14), Apple does not need to cite to expert evidence or claim-specific prior art, because the Asserted Patent speaks for itself. The Federal Circuit has repeatedly confirmed that the patent itself is sufficient to determine § 101 eligibility at the pleading stage without discovery or extrinsic evidence. *See WhitServe LLC v.*

*Donuts Inc.*, 809 F. App'x 929, 935 (Fed. Cir. 2020) ("In the § 101 context, 'the specification alone' may suffice to resolve the patent-eligibility inquiry."); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *SAP Am.,* 898 F.3d at 1167; *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912–13 (Fed. Cir. 2017); *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 980 (Fed. Cir. 2020).

Accordingly, the asserted claims fail to recite an inventive concept in their ordered combination of steps or otherwise.

**C. Dismissal with Prejudice Is Appropriate**

Ginko argues that the Court should grant leave to amend so Ginko can allege "that prior proximity-exchange systems…did not contain the asserted ordered combination[.]" Dkt. 112 at 16. But as explained above, the question under § 101 is not whether the ordered combination existed in the prior art. Even if the specific ordered combination were novel—which Apple does not concede—novelty alone does not satisfy step two. The Federal Circuit has held that "a claim for a new abstract idea is still an abstract idea." *SAP Am.*, 898 F.3d at 1163 (cleaned up). "[I]t [is not] enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103." *Id.* (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 89–90 (2012)).

The Federal Circuit has rejected attempts to manufacture a factual dispute at step two by arguing that the claimed invention differs from prior art systems. In *BSG Tech*, the Federal Circuit found that the claims did not provide an inventive concept at step two even though the specification stated that the claims recited features that provided benefits over conventional prior art databases because the claims—like those at issue here—simply restated the abstract idea. 899 F.3d at 1290–91; *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (holding that "invocation of already-available computers that are not themselves plausibly asserted

to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional") (cleaned up). The same reasoning applies here. Ginko's attempt to introduce prior art to create a "factual dispute" about conventionality does not change the character of the claims or the specification.

The § 101 deficiency lies in the claims and specification themselves—the functional character of the claims, the absence of any technical improvement, and the specification's admission that all components are "well-known." No amount of extrinsic pleading about how prior art systems differ from the invention can cure those intrinsic deficiencies. Any proposed amendment to allege facts about prior art systems would be futile, and dismissal with prejudice is appropriate.

## II. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court enter judgment on the pleadings with prejudice that claims 10, 11, and 14 of the Asserted Patent are ineligible under 35 U.S.C. § 101.

Dated: May 14, 2026

Respectfully Submitted,

By: */s/ Garland T. Stephens*

Garland T. Stephens (NY Bar No. 2567162)
garland@bluepeak.law
Melissa L. Hotze (*admitted pro hac vice*)
hotze@bluepeak.law
John P. Brinkmann (*admitted pro hac vice*)
john@bluepeak.law
BLUE PEAK LAW GROUP LLP
3139 W Holcombe Blvd., PMB 8160
Houston, TX 77025
Telephone: (281) 972-3036

Jason F. Choy (Bar No. 277583)
choy@bluepeak.law
BLUE PEAK LAW GROUP LLP
3790 El Camino Real, PMB 846

Palo Alto, CA 94306
Telephone: (213) 647-1228

Anna E. Dwyer (*admitted pro hac vice*)
anna@bluepeak.law
BLUE PEAK LAW GROUP LLP
PO Box 20006
New York, NY 10025
Telephone: (772) 631-6460

*Attorneys for Defendant APPLE INC.*